OPINION OF THE COURT
Harold J. Hughes, J.
Plaintiff moves for an order compelling specific performance of a settlement agreement, or, in the alternative, vacating the settlement and restoring the action to the Trial Calendar.
On November 6, 1981, 37-year-old Warren Gladstone was killed when his automobile was struck by a tractor trailer combination. D. W. Ritter Company was the owner of the trailer which was being towed by a tractor owned by Robert Van Campen Trucking, Inc., and which was leased to Ritter. Mr. Gladstone was earning over $32,000 a year as a bank examiner, and was survived by a wife and two minor children. Mrs. Gladstone, as executrix, commenced this wrongful death action against Ritter, Van Campen and the truck driver, Kellogg Mann. Ritter had an insurance policy issued by Carriers Insurance Company, while Van Campen and Mann *924 are covered by a policy written by the Hartford Insurance Company.
Upon commencement of the wrongful death action, Hartford took the position that its coverage was excess and Carriers had the primary coverage. Despite the fact that its insured, Van Campen, supplied the driver, Hartford maintains that since the unit was moving under Ritter’s Interstate Commerce Commission permits, Ritter was the trucker. In a letter dated March 22, 1983, Hartford’s claims supervisor, Lee Czechowicz, advised defense counsel that "Under ICC Rules and Regulations, Ritter’s insurance coverage would be primary up to their policy limits and The Hartford’s would be excess.” Despite repeated demands of counsel for Ritter, Van Campen and Mann, Hartford refused to participate in the defense or settlement of the wrongful death action.
The case was reached for trial during February of 1985 and, after extensive negotiations, a structured settlement was arrived at. The terms of the settlement were incorporated into the order of this court dated March 14, 1985. Under the terms of the order, Carriers was to make a $400,000 lump-sum payment to Mrs. Gladstone and then purchase annuities to guarantee the future payments required by the order. Carriers made an initial payment of $322,700 and a subsequent payment in October of 1985 of $16,000 representing monthly payments due for May through December of 1985. Thereafter, Carriers became insolvent and was placed in liquidation by the Iowa District Court for Polk County. Carriers could no longer purchase the annuities. Many States have set up funds to compensate insureds in the event of an insurer’s bankruptcy. Since Ritter operated in New Jersey, the New Jersey Property-Liability Insurance Guaranty Association agreed to extend its maximum limit of coverage, $300,000, towards the purchase of the annuities. However, that sum was insufficient, and by letter dated July 6, 1986, defense attorney William Pentak wrote to the Hartford demanding that they make up the difference of the cost of the structured settlement annuities. Hartford refused, resulting in this motion.
The motion raises four major issues. The first two issues are whether a motion such as this is the appropriate remedy, and whether jurisdiction of Hartford has been obtained. The third issue is whether Hartford is bound by the terms of the settlement agreement, even though not a party to it. The fourth issue is whether Hartford is correct in its contention that its duty as an excess insurer entails only providing *925 insurance in excess of the amount specified in the primary insurance policy (Carriers), and that the insolvency of the primary insurer does not impose an obligation upon an excess insurer to make payments that would otherwise be required of the primary insurer.
Hartford contends that resort to a motion such as this is improper, and the correct remedy would be a declaratory judgment action or a direct action against the insurer after entry of judgment against the insured (Insurance Law § 3420). The court disagrees. Much of the history of legal reform has been an attempt to undo the exalting of form over substance (see, CPLR 103). Only delay would be accomplished by following the procedure proposed by Hartford. The goal of procedure is to "secure the just, speedy and inexpensive determination of every civil judicial proceeding” (CPLR 104). Fortunately, the Court of Appeals decision in Teitelbaum Holdings v Gold (48 NY2d 51) permits that result here.
In the Teitelbaum Holdings case, the Court of Appeals held that until the filing of a stipulation of discontinuance or actual entry of judgment, a stipulation settling a lawsuit can be enforced by the court by motion. There is no indication in the papers submitted on this motion that a stipulation of discontinuance has been filed, or that a final judgment has been entered. Consequently, the procedure employed is appropriate.
The next question is whether the court has jurisdiction of Hartford. The first predicate for jurisdiction would be Hartford’s opposition to the merits of the application, which in prior cases has been held to be a submission to jurisdiction (Danzis v Metropolitan Life Ins. Co., 23 NYS2d 733, 734). More importantly, the Third Department has long followed the policy of treating insurance companies differently than other nonparties. In Bennett v Troy Record Co. (25 AD2d 799), an insurance company resisted disclosure upon the ground that it was a nonparty witness. In rejecting that argument, the Appellate Division (p 800) stated: "Although the insurance carrier is not a 'party’ named in the action, 'In view of the realities of the relation between insurers and insured they should be treated as if they were one’ (3 Weinstein-KornMiller, N. Y. Civ. Prac., par. 3120.10) and therefore it actually is not a true non-party witness. The relationship between a defendant and an insurance company is so closely related as to the subject-matter of the lawsuit that as a matter of fact, if *926 not in law, the insurance company is the real and actual defendant, the real party in interest”.
The same rationale is applicable in this case. The service of the order to show cause upon Hartford is sufficient to give this court jurisdiction of it (see generally, Thrasher v United States Liab. Ins. Co., 19 NY2d 159).
The next question is whether Hartford can be held to be bound by the terms of the settlement. First, despite the alternate relief requested by the plaintiff, there is no basis for setting aside the stipulation of settlement as the record is devoid of evidence of fraud, collusion, or mistake, the only basis upon which a stipulation of settlement can be undone (Heimuller v Amoco Oil Co., 92 AD2d 882). Returning to the effect of the settlement upon Hartford, the general rule is that a stipulation is not binding upon a person who is not a party to the agreement (Doyle v Happy Tumbler Wash-O-Mat, 113 AD2d 818). In fact, most insurance policies have language prohibiting an insured from settling with a third party without the insurer’s consent. However, the rule is different with respect to an insurer who has breached its duty to defend. "An insurer who breaches its obligation to defend subjects itself to liability for the amount of any reasonable settlement made by the insured” (Rochester Woodcraft Shop v General Acc. Fire & Life Assur. Corp., 35 AD2d 186, 188), so long as the settled claim is clearly within the coverage of the policy (Servidone Contr. Corp. v Security Ins. Co., 64 NY2d 419). Hartford has never raised the contention that its policy does not cover the Gladstone wrongful death cause of action and, therefore, the remaining question is whether it breached its duty to defend. Clearly, it did so.
Long ago, Judge Meyer stated that an excess insurer has a duty to participate in the defense with the prime insurer, even though the excess insurer might never be required to pay because of a settlement or judgment within the coverage of the prime insurer (Paliotta v Aetna Ins. Co., 66 Misc 2d 929; Allstate Ins. Co. v Aetna Cas. & Sur. Co., 123 Misc 2d 932; cf. Mandell Corp. v Insurance Co., 125 Misc 2d 390).* That is the *927 situation here. By the terms of its policy Hartford had an obligation to defend Van Campen and Mann. Early in the litigation, counsel for Van Campen and Mann requested Hartford’s active participation in the defense of the action. Hartford wrongfully refused any involvement in the case. The refusal constituted a breach of its duty to defend and obligated it to pay any reasonable settlement arrived at by its insureds within the coverage of its policy. It is beyond question that the settlement terms are reasonable.
The next issue for resolution is Hartford’s contention that the duty of an excess insurer entails only providing insurance in excess of amounts specified in primary insurance policies, and insolvency of a primary insurer cannot create liability on the part of the excess insurer for any amount below that specified in the primary policy. Hartford cites the cases of Molina v United States Fire Ins. Co. (574 F2d 1176) and St. Vincent’s Hosp. & Med. Center v Insurance Co. (117 Misc 2d 665) as support for its position. Both cases are distinguishable because the policies in those cases were written with language requiring the insured to maintain basic coverage in specified amounts, which is not the case here. Hartford’s policy was written as a primary insurance policy and, thus, does not have the standard language of a true excess policy requiring basic coverage in a specified amount. Hartford’s obligation to pay must be determined by the language of its policy (Interstate Motor Frgt. Sys. v Michigan Mut. Liab. Co., 87 AD2d 715, 716). Hartford’s other insurance provision provides: "This policy’s liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker.”
Hartford points out that since its insured’s covered auto was leased by Ritter, its coverage was clearly excess. However, the language chosen by Hartford’s draftsman makes the policy "excess over any other collectible insurance” (emphasis supplied). Similar language was construed by the First Department in American Lumbermens Mut. Cas. Co. v Lumber Mut. Cas. Ins. Co. (251 App Div 231, 235) as follows: "We interpret the words, 'total amount of valid and collectible insurance,’ to mean insurance which is capable of protecting the insured. It merely excludes invalid or illegal insurance (such as insurance which is voidable for misrepresentation) and uncollectible insurance (such as insurance of an insolvent company) from the computation of total insurance for the purposes of apportionment.”
*928 The court construed the phrase "collectible insurance” to exclude the insurance of an insolvent company. The same construction is appropriate here (see, Mandell Corp. v Insurance Co., 125 Misc 2d 390, 392, supra). Since there is no other collectible insurance, Hartford’s policy by its own language is excess only as to the amount of collectible insurance available to its insureds, i.e., sums already paid by Carriers, and the $300,000 available through the New Jersey Property-Liability Insurance Guaranty Association, and is primary as to all other sums owed by Ritter, Van Campen and Mann to the plaintiff.
The motion of the plaintiff for an order compelling specific performance of the settlement outlined in the order of this court dated March 14, 1985 will be granted, without costs, by directing the defendants’ insurer, the Hartford Insurance Company, to fully comply with the settlement terms by joining with the New Jersey Property-Liability Insurance Guaranty Association in purchasing the structured settlement annuities.

 Mandell Corp. v Insurance Co. (125 Misc 2d 390) is distinguishable because here the insureds actively requested the participation of the excess carrier in the defense of the action. The insureds paid a premium for Hartford’s assistance in the event of a lawsuit. There is nothing in the contract or common law permitting Hartford to accept the premium and then unilaterally decide that since there is other insurance involved, it can ignore its insured’s request for help.