217 N.J. Super. 436 (1987)
526 A.2d 236
WERNER INDUSTRIES, INC., PLAINTIFF-APPELLANT,
v.
FIRST STATE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
THE RICE AGENCY, A NEW JERSEY CORPORATION, DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
WEGHORN INTERNATIONAL, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1987.
Decided May 6, 1987.
*438 Before Judges PRESSLER, BAIME and ASHBEY.
Jonathan S. Cole argued the cause for appellant Werner Industries Inc. (Cole, Geaney, Yamner & Byrne, attorneys; Jonathan S. Cole, on the brief).
Robert F. Walsh argued the cause for respondent First State Insurance Co. (Siff, Newman, Rosen & Parker, attorneys; Robert F. Walsh, on the brief).
Briefs were not submitted on behalf of The Rice Agency and Weghorn International, Inc.
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents a question of first impression. At issue is whether an excess liability carrier is obliged to pay a claim falling within the coverage of the underlying insurance where the primary insurer has become insolvent. The surplus umbrella policy issued in this case provides that the secondary insurer will pay sums in excess of the "amounts recoverable" under the underlying insurance. We hold that under this language the *439 excess carrier is duty-bound to bear the loss resulting from the insolvency of the primary insurer.
The facts are not in dispute. Plaintiff, a machinery manufacturer, retained the Rice Agency, a licensed broker, to procure primary general insurance and excess liability coverage. The broker placed plaintiff's underlying insurance with Ambassador Insurance Company (Ambassador) and its surplus umbrella coverage with defendant First State Insurance Company. The umbrella policy issued by defendant is an extensive and complex document consisting of a declaration page, an insuring agreement and several attached riders. The declaration page provides for individual occurrence and aggregate annual maximum liability coverage in the amount of $3,000,000 for injury or damage "in excess of [t]he amount recoverable under the underlying insurance as set out in [s]chedule A." Attached to the policy is schedule A which states the limits of the underlying Ambassador policy, $500,000 for bodily injury and $250,000 for property damage. The declaration page also provides that the "limit of [defendant's] liability is subject to all the terms of [the] policy."
The insuring agreement states that defendant "shall be liable only for the ultimate net loss in excess of the ... insured's underlying limit...." The term "ultimate net loss" is defined as "the sums paid as damages for which the insured is legally liable after making deductions for all other recoveries, salvages and other insurance (whether recoverable or not) other than the underlying insurance...." The term "underlying limit" is defined as "an amount equal to the limits of liability indicated beside the underlying insurance listed in [s]chedule A, plus the applicable limits of any other underlying insurance collectible by the insured." The agreement further provides that coverage is not applicable until the insured's underlying insurer becomes obligated to pay the "underlying limit." In the agreement, the insured "warrants" that the underlying insurance "shall be maintained in force" and that any renewals or replacements will not be "more restrictive in coverage." In the event *440 of a breach of that provision, the agreement states that defendant's liability under the policy will not be increased.
As noted previously, several riders and schedules are attached to the insuring agreement. The only rider in any sense relevant to the issue presented is one entitled "contractual liability." In that rider, apparently designed to cover risks assumed by the insured by way of indemnification agreements, it is stated that the policy "is not applicable unless the contractual liability is covered by valid and collectible underlying insurance...."
During the policy period, plaintiff was served with complaints in two personal injury actions. Both complaints were referred to Ambassador for defense and possible indemnification. In both cases, plaintiff advised Ambassador that the claims might exceed the coverage provided by the underlying insurance. Defense of these matters was undertaken by Ambassador which retained attorneys on plaintiff's behalf. Although one matter was settled for an amount substantially less than the underlying insurance policy limit, the other case remains pending.
In 1984, Ambassador was declared insolvent by a Vermont court. Since Ambassador was a surplus line insurer, it was excluded from the purview of the New Jersey Property  Liability Insurance Guaranty Association Act (N.J.S.A. 17:30A-1 et seq.). Our Legislature thus enacted the New Jersey Surplus Lines Insurance Guaranty Fund Act (N.J.S.A. 17:22-6.70 et seq.) specifically to deal "with the imminent declaration of insolvency of Ambassador...." Introductory Statement, Assembly Bill No. 2273, L. 1984, c. 101. The fund created by that statute provides coverage up to a maximum of $300,000 for any single occurrence. N.J.S.A. 17:22-6.74a(1). That amount may be adjusted periodically based on the monies available to the fund. Following plaintiff's application, the fund assumed the defense in the pending personal injury action. We are advised that the fund is presently paying claims on a proportional basis *441 covering only 40% of the amounts due with the promise to pay the remainder when monies become available.
Based upon these events, plaintiff filed a complaint seeking a declaratory judgment obligating defendant to provide coverage and indemnify it for all claims and losses arising during the policy period. Plaintiff initially contended that the policy language limited defendant's liability to amounts over the primary coverage only when the underlying insurance remains "recoverable" and "collectible." In the case where the primary insurer collapses because of insolvency, plaintiff read the policy as providing "drop down" coverage; i.e., the excess insurer drops down and assumes the primary insurer's responsibilities. As the litigation developed, plaintiff modified its position arguing only that defendant should pay all amounts over and above those provided by the fund on behalf of Ambassador. Defendant filed its answer and counterclaim seeking dismissal of the complaint and a declaration confining its obligation to the payment of amounts in excess of $500,000 on the personal injury claim and $250,000 for property damage.
The parties filed cross-motions for summary judgment. Following oral argument the trial judge issued a letter opinion in which he concluded that plaintiff must bear the loss resulting from the primary insurer's insolvency. Judgment was entered accordingly and this appeal followed.

I
Preliminarily, we reject defendant's argument that this action was brought prematurely. Of course, we recognize that all present and future claims against plaintiff may ultimately be paid by the fund pursuant to N.J.S.A. 17:22-6.74a(1). We are quick to add, however, that at the time of oral argument at least one action was pending against plaintiff in which damages well in excess of the $300,000 limit provided by that statute were demanded. The existence of that suit and the strong *442 possibility of future litigation plainly demonstrate that a concrete, contested issue is presented.
We note that the Declaratory Judgments Act (N.J.S.A. 2A:16-50 et seq.) is a remedial device designed to expedite the definitive establishment of private rights and duties and thereby forestall the emergence of costly and cumbersome litigation. Hartford, etc. Indem. Co. v. Selected Risks Indem. Co., 65 N.J. Super. 328, 332 (App.Div. 1961). This worthy purpose amply justifies the liberal construction historically accorded to the statutory scheme. See N.J. Ass'n for Retarded Citizens v. Human Services, 89 N.J. 234, 241 (1982); Nat.-Ben Franklin Fire Ins. Co. v. Camden Trust Co., 21 N.J. 16, 23-24 (1956); N.J. Home Builders Ass'n v. Div. on Civil Rights, 81 N.J. Super. 243, 251-252 (Ch.Div. 1963), aff'd sub nom. David v. Vesta Co., 45 N.J. 301 (1965). As we have previously remarked, "[n]o more fertile ground exists for the use of the declaratory judgment procedure than in the field of insurance...." Condenser Service, etc., Co. v. American, etc., Ins. Co., 45 N.J. Super. 31, 38 (App.Div. 1957), certif. den., 24 N.J. 547 (1957). See also 20 Appleman, Insurance Law and Practice, §§ 11351-11398 (1947). This is an area in which "the construction of contractual language  a function for which the declaratory judgment machinery is tailor-made  is a constantly recurring event." Hartford, etc., Indem. Co. v. Selected Risks Indem. Co., supra, 65 N.J. Super. at 332. Declaratory judgments dealing with questions of policy coverage are commonly entertained before any monetary judgment has been rendered in the underlying tort action. See, e.g., Sussex Mut. Ins. Co. v. Hala Cleaners, Inc., 75 N.J. 117, 126-127 (1977); Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 391 (1970); Odolecki v. Hartford Accident & Indemnity Co., 55 N.J. 542, 549 (1970); In re Estate of Gardinier, 40 N.J. 261, 265 (1963); Williams v. American Home Assur. Co. et al., 121 N.J. Super. 351, 359 (App.Div. 1972), certif. den., 62 N.J. 260 (1973); Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 321 (App.Div. 1967); Amer. *443 Policyholders' Ins. Co. v. Portale, 88 N.J. Super. 429, 432 (App.Div. 1965).
We are thoroughly convinced that the issue presented here is not hypothetical or abstract. Rather, there is a concrete, contested question, a definite assertion of legal rights and a denial of them. In short, a justiciable controversy exists.

II
We now turn to the substantive issue presented. At the outset, we emphasize that the question raised is one of contractual interpretation. We are concerned here with issues pertaining to the construction of language contained in an extensive and complex insurance agreement. In that context, it has long been established that while insurance policies are contractual in nature, they are not ordinary agreements but "contracts of adhesion between parties who are not equally situated." Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611 (1986). It has been said that "[c]ourts apply the adhesion doctrine because of the unequal bargaining power of the parties." Id. at 611-612. To that extent, insurance contracts are "unipartite in character." Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). Such contracts "are prepared by the company's experts, [people] learned in the law of insurance," ibid., and thus it is not unfair that the insurer "bear the burden of any resulting confusion." Gaunt v. John Hancock Mut. Life Ins. Co., 160 F.2d 599, 602 (2 Cir.1947), cert. den., 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947). These circumstances long ago fathered the principle that doubts as to the existence or extent of coverage must generally be resolved in favor of the insured. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, supra, 35 N.J. at 8.
Our courts "have adopted the principle giving effect to the `objectively reasonable expectations' of the insured for the purpose of rendering a `fair interpretation' of the boundaries of insurance coverage." Meier v. New Jersey Life Ins. Co., supra, *444 101 N.J. at 612, quoting Di Orio v. New Jersey Manufacturers Insurance Company, 79 N.J. 257, 269 (1979). See also Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305 (1965); Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961). Of course, this principle "is, and indeed always has been, one of construction, simply an aid to the proper interpretation of terms devised by the professional underwriter." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 246 (1979). For example, "no amount of semantical ingenuity can be brought to bear on a fire insurance policy so as to afford coverage for an intersection collision." Id. at 247. Only genuine interpretational difficulties engage the doctrine of ambiguity. American White Cross v. Continental Ins. Co., 202 N.J. Super. 372, 381 (App.Div. 1985). That doctrine affords a remedy "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., supra, 81 N.J. at 247.
Applying these principles, we are convinced that the policy language can reasonably be interpreted to expose defendant to liability for amounts which the insured is not able to recover from the underlying insurer because of its insolvency. Specifically, we refer to the language contained in the declaration page which makes the insurer responsible for damages or settlements "in excess of the amount recoverable under the underlying insurance" (emphasis added). Although our research discloses no reported New Jersey opinion dealing with the precise issue, the identical language has been construed by the courts of other jurisdictions to compel the excess carrier to drop down and assume claims payable by the primary insurer but uncollectible by virtue of its insolvency. See Mission Nat. Ins. Co. v. Duke Transp. Co., Inc., 792 F.2d 550, 553 (5 Cir.1986); Reserve Ins. Co. v. Pisciotta, 30 Cal.3d 800, 812-816, 180 Cal. Rptr. 628, 634-637, 640 P.2d 764, 770-773 (1982) (en banc); Donald B. MacNeal Inc. v. Inter. Fire & Cas., 132 Ill. App.3d 564, 567-569, 87 Ill.Dec. 794, 797-798, 477 N.E.2d 1322, 1325-1326 (1985). Cf. Gros v. Houston Fire & Casualty *445 Insurance Co., 195 So.2d 674, 676 (La. Ct. App. 1967), writ refused, 250 La. 644, 197 So.2d 898 (1967); American Lumbermens Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co., 251 A.D. 231, 235, 295 N.Y.S. 321, 324-25 (1937); Gladstone v. D.W. Ritter Co., 133 Misc.2d 922, 508 N.Y.S.2d 880, 883 (Sup.Ct. 1986). In Mission Nat. Ins. Co. v. Duke Transp. Co., Inc., supra, Reserve Ins. Co. v. Pisciotta, supra, and Donald B. MacNeal, Inc. v. Inter. Fire & Cas., supra, the courts interpreted the words "amount recoverable" under the underlying insurance to mean primary insurance which is capable of protecting the insured. In all three cases, the insolvency of the primary insurer was said to render the excess carrier liable. Similarly, in Gros v. Houston Fire & Casualty Insurance Co., supra, American Lumbermens Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co., supra, and Gladstone v. D.W. Ritter Co., supra, the courts construed the phrase "collectible insurance" to exclude the insurance of an insolvent company.
We adopt the reasoning of these decisions and conclude that the policy language limiting liability in excess of the amount recoverable under the underlying insurance was substantially ambiguous. Construing the phrase "amount recoverable" most strongly against the insurer and in favor of the insured, we hold that the language of the excess insurance contract requires defendant to assume the risk of the primary insurer's insolvency.
We reject defendant's contention that the ambiguity created by the representations set forth in the declaration page was cured by language contained in the insuring agreement. We recognize that the "limit of [defendant's] liability" as set forth on the declaration page is said to be "subject to all the [terms] of the policy." We also acknowledge that the definition of the term "underlying limit" coupled with its reference to the attached schedule describing the limits of the Ambassador policy is reasonably susceptible to a construction that the secondary excess insurer is solely responsible for payment of sums in excess of the amount of the underlying insurance. Similar *446 language has been construed accordingly in other jurisdictions. See, e.g., Continental Marble & Granite v. Canal Ins. Co., 785 F.2d 1258, 1259 (5 Cir.1986); Molina v. United States Fire Ins. Co., 574 F.2d 1176, 1178 (4 Cir.1978); Guar. Nat. Ins. Co. v. Bayside Resort, Inc., 635 F. Supp. 1456, 1458 (D.V.I. 1986); Radar v. Duke Transp. Inc., 492 So.2d 532, 537 (La. Ct. App. 1986); Prince Carpentry v. Cosmopolitan Mut. Co., 124 Misc.2d 919, 929-931, 479 N.Y.S.2d 284, 292 (Sup.Ct. 1984); St. Vincent's v. Ins. Co. of North America, 117 Misc.2d 665, 666-668, 457 N.Y.S.2d 670, 672 (Sup.Ct. 1982). We have no quarrel with this interpretation.
Nevertheless, the representations contained in the declaration page are clearly inconsistent with the description of the policy limits set forth in the insuring agreement. We also note that the declaration page is set forth in bold face print in contrast to the insuring agreement. As we have pointed out, the ambiguity thus created must be resolved against the insurer. We necessarily consider the fact that "alternative or more precise" wording, if used, "would have put the matter beyond reasonable question." Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, supra, 35 N.J. at 7.
We further note that other language contained in the insuring agreement bolsters the conclusion we have reached here. For example, in the definition of the term "ultimate net loss," the policy provides that "other insurance (whether recoverable or not)" must be deducted in determining the outer parameters of the insured's claim (emphasis added). Unlike the language contained in the declaration page, this provision expressly indicates that the insured is to bear the risk of the uncollectibility of other insurance. Nor can we ignore the fact that the language requiring the insured to maintain the underlying insurance is wholly silent with respect to the collectibility of such insurance. This is in sharp contrast to language contained in similar surplus umbrella policies which generally imposes upon the insured the burden of maintaining "collectible" underlying *447 insurance. Molina v. United States Fire Ins. Co., supra, 574 F.2d at 1178. Confusion was also created by the use of the word "collectible" in the rider attached to the insuring agreement.
We emphasize the limited contours of our holding. We discern no legal principle, independent of what the insurance contract says, which would require us to transmogrify an excess policy into one guaranteeing the solvency of whatever primary insurer the insured might choose. We do not therefore endorse the implication contained in the decisions of other states that an excess insurer is always obliged to bear the risk of a primary insurer's insolvency. See, e.g., McConnell v. Underwriters at Lloyds, 56 Cal.2d 637, 646, 16 Cal. Rptr. 362, 368, 365 P.2d 418, 424 (1961) and Fageol T. & C. Co. v. Pacific Indemnity Co., 18 Cal.2d 748, 751-752, 117 P.2d 669, 671 (1941). Absent violation of a public policy, statute or regulation, or a constitutional mandate, the parties to a private agreement may allocate risks in any manner they may choose. We merely find here that the policy language is substantially ambiguous and that the construction of the policy advanced by defendant would defeat the reasonable expectations of the insured.
We hold that defendant is responsible for amounts in excess of the insurance available to the insured, i.e., the funds available through the New Jersey Surplus Lines Insurance Guaranty Fund Act. See Gladstone v. D.W. Ritter Co., supra, 508 N.Y.S.2d at 883-884. Cf. Blew, et al. v. Brind Leasing, et al., 216 N.J. Super. 359 (App.Div. 1987). Accordingly, the trial judge committed error in granting defendant's motion for summary judgment and denying plaintiff's.
The judgment of the Law Division is reversed and the matter is remanded for entry of judgment in accordance with this opinion.