FLASHNER MEDICAL PARTNERSHIP *et al.*, Plaintiffs-Appellants, v. MARKETING MANAGEMENT, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—87—3209

Opinion filed September 19, 1989.

Cheryl Weissman, of Chicago, for appellants.

William S. Wigoda, of Horvath & Wigoda, of Chicago, for appellees Marketing Management, Inc., and Ronald Upton.

Dion J. Sartorio and Mitchell A. Orpett, both of Tribler & Marwedel, P.C., of Chicago, for appellees Butler & Messier, Inc., and Roger L. Messier.

Barbara A. McDonald, Don W. Fowler, and Hugh C. Griffin, all of Lord, Bissell & Brook, of Chicago, for appellees William F. Buelle and Roger Reardon.

Lisa Marco Kouba, of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellee Chicago Insurance Company.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiffs Flashner Medical Partnership, the individual partners of Flashner Medical Partnership, and the Flashner Medical Corporation brought a declaratory judgment action against Chicago Insurance Company (CIC) and several insurance program developers and brokers, seeking a declaration that CIC is obligated to defend and indemnify against underlying medical malpractice actions and that CIC and the other defendants are liable for all costs incurred as a result of non-coverage for a specified period. Plaintiffs now appeal from an order of the circuit court granting each defendant's motion to dismiss, raising as issues whether their declaratory judgment action was improperly dismissed as premature; whether the underlying tort claimants are necessary parties to this action; and whether the allegations of breach

of contract, fraud, negligence, and violation of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 733—4) are sufficient to withstand a motion to dismiss. We reverse the judgment of the circuit court and remand for further proceedings not inconsistent with this opinion.

In 1982, plaintiffs purchased a one-year medical malpractice "occurrence based" insurance policy from Ambassador Insurance Company (Ambassador), a Vermont insurance company, effective December 31, 1982. That policy was procured by defendants Marketing Management, Inc. (MMI), and Butler & Messier (B & M), developers of insurance programs; defendant William Buelle, Inc. (Buelle), insurance brokers; and the respective agents of MMI, B & M, and Buelle. In mid 1983, Ambassador was placed on a "watch list" by the Vermont Insurance Commissioner, a fact allegedly known to defendants but not communicated to plaintiffs. In November 1983, Ambassador was placed into receivership and MMI, B & M, and Buelle informed plaintiffs that they had procured replacement insurance coverage with CIC. Plaintiffs maintain that defendants advised them that the CIC policy was retroactive to the effective date of the Ambassador policy and provided the same coverage as that policy.

On December 12, 1983, a telex was transmitted by Ronald Upton of MMI to Buelle, confirming coverage under the CIC policy. The telex stated:

"PER YOUR REQUEST THIS CONFIRMS RETRO COVERAGE FOR DR. BRUCE FLASHNER MEDICAL OFFICE CENTERS IS IN FORCE WITH THE CHICAGO INSURANCE CO. EFF. 11-11-83. RETRO COV. GOES BACK TO THE INCEPTION DATE OF AMBASSADOR INS. CO. POLICY 12-31-82. RETRO COVERAGE PROVIDE ON BASIS THAT IF AMBASSADOR CANNOT PERFORM, CHICAGO INS. CO. WILL."

The telex was relayed to plaintiffs, who maintain that, relying on the representations made in the telex, they made no attempts to secure alternative retroactive coverage.

On December 15, 1983, plaintiffs cancelled the CIC policy and procured prospective coverage with another company. At that time, plaintiffs had not received a copy of the CIC policy and were allegedly unaware that cancellation of the CIC policy would affect retroactive coverage under that policy.

In April or May of 1984, a medical malpractice action was brought against plaintiffs based on events which occurred during the period covered by the Ambassador policy. Plaintiffs notified Buelle and were advised to forward the court papers to MMI. Either MMI or CIC then

retained an attorney to defend plaintiffs in that suit.

In November 1984, plaintiffs were contacted by an attorney retained by Ambassador to represent them in a prior pending medical malpractice action. That attorney was concerned about Ambassador's ability to pay for the defense of the claim while in receivership. Roger L. Messier of B & M assured plaintiffs that insurance under the CIC policy was available for coverage and defense of claims. Messier stated further that B & M and MMI "would guarantee continued defense of the claims." On February 6, 1985, plaintiffs were assured again by MMI's counsel that they were covered by the CIC policy on an occurrence basis and on the same terms as provided under the Ambassador policy.

On September 3, 1985, plaintiffs were advised by letter that the CIC policy covered claims based on occurrences between December 31, 1982, and November 11, 1983, only if such claims were made between November 11, 1983, the effective date of the CIC policy, and December 15, 1983, the date plaintiffs cancelled the CIC policy. Plaintiffs were informed that certain malpractice claims, although based on events that occurred between December 31, 1982, and November 11, 1983, were not covered by the CIC policy because the claims were not made between November 11, 1983, and December 15, 1983.

On March 10, 1987, a liquidation order was issued by a Vermont court terminating all attempts to rehabilitate Ambassador. The order provided for the discontinuance of the defense of claims and suits in which Ambassador's insureds were parties, including claims made and suits brought prior to the date of the order. The order provided further that expenses incurred between November 10, 1983, and the date of the order could be reimbursed through Ambassador's liquidation fund, but contained no similar provision for expenses incurred after the date of the order. After issuance of the order, attorneys in seven malpractice suits demanded direct payment from plaintiffs for litigation costs. Since that time, plaintiffs have paid all necessary defense costs in those malpractice suits.

On March 23, 1987, plaintiffs filed their second amended complaint in this action. Plaintiffs charged CIC with fraud and negligent misrepresentation and alleged that CIC has either waived its policy defenses or is estopped to deny coverage. Plaintiffs charged MMI, B & M, Buelle, and their respective agents with fraud, negligence, negligent misrepresentation, breach of contract to procure insurance, and violation of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 733—4). All defendants moved to dismiss. CIC, B & M, and Roger L. Messier asserted as grounds for dismissal plaintiffs' failure to join the

underlying tort claimants as necessary parties. The other defendants, along with B & M and Messier, asserted that the action was premature. The trial court granted each defendant's motion, agreeing that the action was premature because it had not been ascertained whether Ambassador would reimburse plaintiffs for costs incurred in defending against the malpractice claims. However, the trial court rejected the contention that the action should be dismissed for failure to join necessary parties.

I

Plaintiffs maintain that their claims against CIC are ripe for adjudication because Ambassador is insolvent and under court order not to provide a defense in the underlying tort actions, and there is an actual controversy as to whether CIC itself has a duty to provide a defense in those actions. We agree.

■ Under the Illinois declaratory judgment act (Ill. Rev. Stat. 1985, ch. 110, par. 2—701), where an "actual controversy" exists, the court may make a binding declaration of the rights of interested parties. In insurance coverage declaratory actions, an "actual controversy" exists where "all determinative facts giving rise to the potential policy coverage dispute have occurred prior to the initial demand upon the insurance company" and the insurer "is called upon to either pay or defend a claim on behalf of its insured under the terms of the policy in question." (*Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 485, 263 N.E.2d 481.) The existence of an alternative remedy does not preclude the bringing of a declaratory judgment action. *Blaw-Knox Co. v. Eichleay Corp.* (1968), 100 Ill. App. 2d 141, 241 N.E.2d 614; *La Salle Casualty Co. v. Lobono* (1968), 93 Ill. App. 2d 114, 236 N.E.2d 405.

In this case, there is no dispute that a contract for insurance coverage exists between plaintiffs and CIC; that underlying malpractice suits against plaintiffs have given rise to a policy coverage dispute; and that plaintiffs have called upon CIC to provide a defense against those claims. The only question we need address is whether the present declaratory judgment action is premature because of the possibility that plaintiffs might be indemnified for the costs of defending the underlying suits through Ambassador's liquidation fund.

The question of the effect of a primary insurer's insolvency on an insured's declaratory judgment action against a replacement insurance carrier appears to be one of first impression in Illinois. However, in *Werner Industries, Inc. v. First State Insurance Co.* (1987), 217 N.J. Super, 436, 526 A.2d 236, *rev'd on other grounds* (1988), 112 N.J. 30,

548 A.2d 188, a case involving the same insolvent primary insurer as in this case, the court held that a declaratory judgment action against an excess insurance carrier is not premature because of the primary insurer's insolvency and the possibility of reimbursement through an insolvency fund, where an underlying tort claim seeks damages in excess of the claimant's policy limits. In that case, the plaintiff brought a declaratory judgment action against an excess insurance carrier, claiming that the excess insurance carrier was obligated under the terms of the insurance policy to provide coverage in place of the insolvent primary insurer. The court recognized "that all present and future claims against plaintiff may ultimately be paid by [an insolvency] fund." (*Werner Industries, Inc. v. First State Insurance Co.*, 217 N.J. Super. at 441-42, 526 A.2d at 239.) Still, the court rejected the defendant's claim that the action was premature, noting that at least one tort action was pending against the plaintiff in which damages were sought in excess of the limits on the primary insurance policy and that "the strong possibility of future litigation plainly demonstrate[d] that a concrete, contested issue [was] present[]." *Werner Industries, Inc. v. First State Insurance Co.*, 217 N.J. Super. at 441-42, 526 A.2d at 239.

■ We find *Werner* persuasive and note further that, for purposes of deciding whether an "actual controversy" exists, there is no meaningful distinction between the excess insurance coverage disputed in *Werner* and the replacement insurance coverage in the case *sub judice*. First, the possibility of indemnification through an insolvency fund is no less remote here than in *Werner*, because both cases concern the effect of the insolvency of the same primary insurer under court order not to defend or indemnify against further claims. Second, just as a replacement insurer's liability is contingent on the primary insurer's failure to perform, an excess insurer's liability is contingent on a claim exceeding the limits of the primary insurance policy. In any event, plaintiffs allege that Ambassador has already failed to perform by not undertaking to defend against the malpractice claims. It would be contrary to the general rule that indemnification does not relieve an insurer of its duty to defend (see *Maneikis v. St. Paul Insurance Co.* (7th Cir. 1981), 655 F.2d 818, 822-23), if the possibility of indemnification by Ambassador for defense costs were to render this action premature.

## II

Plaintiffs also maintain that their claims against MMI, B & M, Buelle, and their respective agents are properly brought under the Illinois declaratory judgment act (Ill. Rev. Stat. 1985, ch. 110, par. 2—

701), either because they seek a determination of the construction of a "procurement contract" or because their claims fall under the catch-all provision for "other cases of actual controversy." Plaintiffs assert that an "actual controversy" exists with respect to these defendants, although damages would be available only if both CIC and Ambassador fail to compensate plaintiffs for their losses, because damages generally are not a prerequisite to ripeness in a declaratory judgment action and the potential recovery from an insolvent primary insurer does not bar a declaratory judgment action seeking recovery from other sources. We agree.

■ First, we believe plaintiffs have alleged sufficient facts showing the existence of a contract to bring their claims within the enumerated controversies in the Illinois declaratory judgment act. There is ample support in the record for plaintiffs' contention that they negotiated for the procurement of malpractice insurance coverage and, upon learning of Ambassador's insolvency, relied to their detriment on assurances that replacement coverage had been obtained. We believe that the terms and conditions of such a contract to procure insurance are proper subjects of a declaratory judgment action.

■ ■ Second, we believe that an "actual controversy" exists between plaintiffs and the insurance program developers, brokers, and agents, even though these defendants would be liable only in the event that no recovery is had from either CIC or Ambassador. An "actual controversy" is not one where a wrong has been committed and injury inflicted. Rather, "it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render advisory opinion, or give legal advice as to future events." (*Underground Contractors Association v. Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298.) The case need only "present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." (*Underground Contractors Association v. Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298.) For example, a declaratory judgment action brought by an insured against either a primary or an excess insurance carrier is not premature merely because liability is contingent upon the tort claimant's success in the underlying suit. See *Blaw-Knox Co. v. Eichleay Corp.* (1968), 100 Ill. App. 2d 141, 241 N.E.2d 614; *Werner Industries, Inc. v. First State Insurance Co.* (1987), 217 N.J. Super. 436, 526 A.2d 236.

■ In this case, the terms and conditions of an alleged contract to procure insurance are disputed. An "actual controversy" exists be-

cause the contingent nature of plaintiffs' recovery, like the contingent nature of an insured's recovery in an action against its insurer, does not bar a declaration of the rights and obligations of the parties to the contract. In any event, plaintiffs have arguably been damaged already by CIC's alleged breach of its duty to defend. Moreover, plaintiffs are presently litigating the coverage question, and a determination of the rights and obligations of the parties to the procurement contract in the same action will certainly aid in the resolution of the entire controversy and avoid future litigation.

## III

■ Plaintiffs maintain that the tort claimants in the underlying suits are not necessary parties to this action. Plaintiffs assert that the interests of the tort claimants in this litigation are "de minimus" because they have "a reasonable expectation of non-coverage by CIC" and, in any event, the interests of the tort plaintiffs are adequately represented by the parties before the court. We disagree and hold that the tort claimants are necessary parties who must be named in the suit.

A necessary party is one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence; (2) to reach a decision which will protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy. *Consolidated Cable Utilities, Inc. v. City of Aurora* (1982), 108 Ill. App. 3d 1035, 1039, 439 N.E.2d 1272; *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 623, 387 N.E.2d 946, 949.

■ Where questions of liability insurance coverage are litigated, claimants against the insured are ordinarily necessary parties to the action. (*Williams v. Madison County Mutual Automobile Insurance Co.* (1968), 40 Ill. 2d 404, 407, 240 N.E.2d 602; *American Home Assurance v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 812, 365 N.E.2d 956.) However, the interest of the claimant "must be a present substantial interest as distinguished from a mere expectancy or future contingent interest." (*Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 422, 52 N.E.2d 1000; *American Home Assurance v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 812, 365 N.E.2d 956.) For example, it has been held that where a claimant has entered into a settlement agreement with the insured, its interest is no longer substantial and it is not a necessary party to a declaratory judgment action brought by the insurer to determine coverage. See *American*

*Home Assurance v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 812, 365 N.E.2d 956.

■■ The tort claimants in this case plainly have interests in the outcome of the litigation because a declaration of noncoverage would eliminate a source of funds. Nothing in the record, such as settlement agreements between plaintiffs and the tort claimants, suggests that these interests are less than substantial. Plaintiffs' contention, that the tort claimants' interests are "de minimus" because they have "a reasonable expectation of non-coverage," is misguided and seemingly contrary to plaintiffs' own position in this litigation.

■■ We also reject plaintiffs' contention that the tort claimants are not necessary parties because their interests are adequately represented in this action. Generally, the "doctrine of representation" applies where parties before the court have the same interests and would be equally certain to bring them forward and protect them as the interests of the party not before the court. (*Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 362 N.E.2d 382.) Plaintiffs cite no Illinois cases, nor have we found any, applying this doctrine to tort claimants in a declaratory judgment action to determine liability insurance coverage. In any event, we do not believe the doctrine provides an exception in this case to the "absolute and inflexible" requirement of joinder of necessary parties. (See *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 270, 398 N.E.2d 284.) Although the tort claimants and plaintiffs have similar interest in a determination of coverage under the CIC policy, the success of plaintiffs' claims against the other defendants might depend upon a determination of noncoverage. Plaintiffs, therefore, might choose to pursue a litigation strategy that could adversely affect the absent tort claimants.

### IV

Finally, plaintiffs maintain that their complaint states causes of action against certain defendants for breach of contract, fraud, negligence, and violation of the Illinois Insurance Code properly brought as separate counts in this declaratory judgment action. Those defendants contend that the allegations do not sufficiently allege damages to state causes of action and are nevertheless actions at law not properly before the court in a declaratory judgment action.

■■ We agree that the subject claims are actions at law and not proper subjects for a declaratory judgment. We note, however, that under the Illinois declaratory judgment act (Ill. Rev. Stat. 1987, ch. 110, par. 2—701), "further relief" as is necessary or proper, including a judgment for money damages, is available to plaintiffs upon petition to

the trial court after a declaration of the rights and obligations of the parties has been made. (See *Midway Tobacco Co. v. Mahin* (1976), 42 Ill. App. 3d 797, 356 N.E.2d 909.) Accordingly, we do not decide whether the subject allegations would be sufficient to withstand a motion to dismiss in an action at law. Instead, we direct the circuit court on remand to strike counts III through VI of plaintiffs' complaint, but allow plaintiffs to petition for such further relief as becomes necessary or proper after the rights and obligations of the parties have been determined. We further direct the circuit court to allow plaintiffs to join all necessary parties in this declaratory judgment action.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BILANDIC, P.J., and HARTMAN, J., concur.