597 A.2d 1124

**DONEGAL MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Lynn E. LONG, individually and as Administratrix of the Estate of Lloyd E. Long, Deceased, and Kenneth Hertz and Lisa Hertz, his wife, and Cathleen C. Opel, Administratrix of the Estate of Joseph E. Hirst, Deceased, and Genway Corporation, Jones Pontiac Company, Jones Leasing Company, J & J Electronics, Amos Myers, Elsie Myers, Bullfrog Inn, Inc., and The Pennsylvania Insurance Guaranty Corporation.**

**Appeal of GENWAY CORPORATION, Jones Pontiac Company and Jones Leasing Company.**

Supreme Court of Pennsylvania.

Argued April 11, 1991.

Decided Oct. 7, 1991.

David H. Patterson and Louis C. Long, Pittsburgh, for appellant.

Peter J. Speaker, Harrisburg, for Donegal Mut. Ins. Co.

Joseph Roda, Lancaster, for Lynne E. Long and Kenneth and Lisa Hertz.

Harry St. C. Garman, Lancaster, for Cathleen C. Opel.

Matthew J. Creme, Jr., Lancaster, for J & J Electronics.

Timothy J. Reese, Lancaster, for Amos and Elsie Myers.

Timothy I. Mark, Harrisburg, for Bullfrog Inn, Inc.

Hugh M. Emory, Wayne, for Pa. Ins. Guar. Ass'n.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

In this opinion we are called upon to determine the responsibility of the Pennsylvania Insurance Guarantee Association to pay a covered claim in a situation where "excess" insurance is available. The underlying facts necessitating this opinion are not in dispute.

Joseph E. Hirst, now deceased, was a partner in a business enterprise operating under the name of J & J Electronics. Donegal Insurance Company (hereinafter Donegal) issued a policy of insurance to Mr. Hirst in which Donegal agreed to provide primary coverage in an amount of $300,-000.00 to Mr. Hirst and his partner with respect to vehicles owned by them, and to provide excess coverage in the same amount for those vehicles not owned but nonetheless used (e.g. leased vehicles) by the insureds.

On August 31, 1985, while Mr. Hirst was operating a leased vehicle, he was involved in an accident with another automobile driven by one, Lloyd E. Long. Both drivers were killed and a passenger in the Long vehicle was seriously injured. The company which leased the vehicle to Mr. Hirst was Jones Leasing.[1] By the terms of the lease Jones Leasing agreed to provide liability coverage for Mr. Hirst in

---

1. Jones Leasing leased the vehicle Mr. Hirst was operating from defendant Genway Corporation, the named appellant herein, which purchased the vehicle from defendant Jones Pontiac. For the purposes of this appeal the three will be referred to collectively as Jones Leasing.

the amount of one million dollars.[2] To protect itself from this exposure Jones Leasing purchased a policy of insurance from Midland Insurance Company for up to one million dollars ($1,000,000.00), with a deductible of two hundred and fifty thousand dollars ($250,000.00). This deductible was the responsibility of Jones Leasing. Approximately seven months after the above mentioned accident Midland Insurance Company was determined to be insolvent.[3] Subsequently, suit was instituted against the Administratrix of the Hirst Estate by the Administratrix of the Long Estate. Donegal undertook the defense on behalf of the Hirst Estate. Donegal then filed the instant declaratory judgment action to determine the liabilities of the respective insurers in the face of Midland's insolvency. The parties subsequently filed cross motions for summary judgments.

On these motions the trial court held, *inter alia*, that the policy of insurance issued by Midland was guaranteed by the Pennsylvania Insurance Guaranty Association (PIGA),[4] and that PIGA stood in the shoes of the insolvent insurer and was liable up to its $300,000.00 statutory limit,[5] with the proviso that PIGA would be entitled to reimbursement from Jones Leasing for any unused portion of its $250,-000.00 deductible under the Midland policy. The trial court also held that Donegal's liability was that of an excess insurer; that an alcohol exclusion clause in the rental

**2.** The language of the lease agreement provided in relevant part: "Lessor provides liability coverage for Customer and any authorized and qualified operators described herein and no others in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy for bodily injury and property damage (1,000,000 combined single limit for each occurrence) arising from use of the Vehicle as permitted by this Rental Agreement."

**3.** Midland was declared insolvent by order of the Supreme Court of the State of New York.

**4.** *See* Act of November 25, 1970, P.L. 716, as amended, 40 P.S. § 1701.101 *et seq.*

**5.** Pursuant to 40 Pa.S. 1701.201(b)(1)(i), the Pennsylvania Insurance Guaranty Association Act (PIGA) is required to provide coverage for those claims brought against insolvent insurers which are in excess of one hundred dollars ($100.00) and less than three hundred thousand dollars ($300,000.00).

agreement was void on grounds of public policy; and that Jones Leasing was not responsible for the full coverage of one million dollars based on the conclusion that Jones' obligation was fulfilled by the purchase of the Midland policy. PIGA, Donegal, and Jones Leasing appealed to the Superior Court.[6]

On appeal the Superior Court affirmed the trial court's determination that PIGA was primarily responsible, as well as the trial court's determination that Donegal's liability was that of an excess carrier; but reversed the determination that Jones Leasing had satisfied its obligation to supply insurance under the terms of the rental agreement by purchasing the Midland policy.[7] The Superior Court then remanded the case to the trial court.[8] 387 Pa.Super. 574, 564 A.2d 937.

Jones Leasing petitioned this Court for allowance of appeal, which we granted limited to the narrow issue of whether PIGA was primarily or secondarily liable.[9] Jones Leasing asserts that the courts below erred in placing Donegal in the position of an excess insurer, maintaining instead that Donegal should occupy Midland's former posi-

6. On appeal both Jones Leasing and PIGA argued that they did not owe coverage or indemnification to the Hirst Estate on the grounds that Hirst operated the rented vehicle while under the influence of alcohol, and such conduct was in violation of the rental agreement. Donegal in turn appealed from that portion of the trial court's order which held that Jones Leasing had satisfied its obligation to provide insurance coverage under the rental agreement by purchasing the Midland policy.

7. The issue remains open due to the language employed in the rental agreement. The Superior Court held that this language was ambiguous, and hence a jury question existed as to the meaning to be ascribed to this language.

8. Though not relevant for the purposes of this opinion, the Superior Court also affirmed the trial court's invalidation of an intoxication clause in the rental agreement, and directed the trial court to resolve the issue of whether the claimants were required to exhaust their uninsured motorist benefits.

9. It should be noted that prior to the time of argument, PIGA executed a settlement agreement in favor of the Estate of Lloyd E. Long. Thus, PIGA is not participating in this appeal. However, the position of PIGA along the priority chain will affect the liability of the participating parties.

tion, i.e. that of a primary insurer.[10] For the following reasons we disagree and affirm the order of the Superior Court.

In support of its position petitioner has presented three arguments: 1) that the priority scheme as determined by the Superior Court is in contravention of the non-duplication of recovery provision set forth in the PIGA enabling statute; 2) that the Superior Court's decision is inconsistent with its decision in a similar case; and 3) that the decision of the Superior Court is inconsistent with the manner in which other jurisdictions have resolved the question.

Our response is inextricably tied to our interpretation of the PIGA statute; and when called upon to interpret a statute we are guided by the Statutory Construction Act, 1 Pa.C.S. § 1501, *et seq.*[11] Pursuant thereto our purpose is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). In ascertaining that intent we may consider, *inter alia*, the "object to be attained" by the statute and the "consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(4); (6). Moreover, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

 The stated purpose of the Pennsylvania Insurance Guaranty Association is to cover claims [12] of an insolvent insurer. 40 P.S. § 1701.201(b)(1)(i). For this reason the Association shall "be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent." 40 P.S. § 1701.201(b)(1)(ii). The only limitation placed upon an

10. Such a construction would have the effect of potentially absolving Jones Leasing from part of its liability of the $250,000.00 deductible, assuming that the ultimate recovery was less than $550,000.00.

11. Act of December 6, 1972, P.L. 1339 No. 290, § 3.

12. The Act defines a "covered claim" as "an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer." 40 P.S. § 1701.103 5(a).

injured party is that the Association's own limitations of liability apply rather than those of the insolvent insurer.[13] Thus, by the clear and unambiguous terms of the statute, PIGA is deemed to be an insurer and is placed in the stead of the insolvent insurer, with all of that insurer's rights and duties and obligations.[14]

■ Appellant seeks to avoid this clear and unambiguous language by reliance on that part of the statute which is intended to preclude a claimant from recovering against PIGA where other insurance is available. The section in question provides:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance.

40 P.S. § 1701.503(a). For the below stated reasons this section is not applicable to the present situation.

As noted previously, the policy of insurance issued by Donegal to Mr. Hirst provided: "[f]or any covered auto you don't own, the insurance provided by this policy is excess over other collectible insurance." The statutory nonduplication section, by its clear and unambiguous terms, is operative only when there exists a claim which can be brought against another insurer. The claimants here had no other claim, because the collectability of a claim against Donegal was dependent upon the existence of a primary insurer. Given Midland's demise there was no extant primary coverage, hence there could be no excess coverage unless and until PIGA honored its statutory obligation. Consequently,

**13.** For instance in this case, although Midland's policy was issued in the amount of one million dollars, that coverage would be reduced to $300,000.00 less the $100.00 deductible, which is the statutory limitation provided by the Act.

**14.** Pursuant to 40 P.S. § 1701.602, the Association is even empowered to seek a stay of proceedings and to reopen default judgments involving the insolvent insurer.

since there were no other claims available to the claimants prior to accessing the PIGA funds the non-duplication section was not applicable.[15]

We note that the decision to refuse to transform an excess carrier into a primary carrier is consistent with the decisions of the following jurisdictions which have been called upon to address this issue: *Mission National Insurance Co. v. Duke Transportation Co., Inc.*, 792 F.2d 550 (5th Cir.1986) (applying Louisiana law); *Washington Insurance Guaranty Association v. Keeter*, 847 F.2d 761 (11th Cir.1988) (applying law of the state of Washington); *District of Columbia Insurance Guaranty Association v. National Railroad Passenger Corp.*, 721 F.Supp. 1378 (U.S.D.C.D.C.1989) (applying law of the District of Columbia) aff'd. 925 F.2d 488 (D.C.Cir.1991); *United States Fire Insurance Co. v. Capital Ford Truck Sales*, 257 Ga. 77, 355 S.E.2d 428 (1987); *American Hoist and Derrick Co. v. Employers' of Wausau*, 454 N.W.2d 462 (Minn.Ct.App. 1990); *Werner Industries Inc. v. First State Insurance Co.*, 112 N.J. 30, 548 A.2d 188 (1988); *Pergament Distributors Inc. v. Old Republic Insurance Co.*, 128 A.D.2d 760, 513 N.Y.S.2d 467, appeal denied, 70 N.Y.2d 607, 519 N.Y.S.2d 1031, 514 N.E.2d 389 (1987); *Wurth v. Ideal Mutual Insurance Co.*, 34 Ohio App.3d 325, 518 N.E.2d 607 (1987); *Rapid City Regional Hospital, Inc. v. South Dakota Insurance Guaranty Association*, 436 N.W.2d 565 (S.D. 1989).[16]

**15.** In further support of its position Jones has contended that because Donegal collected a premium from one of the involved parties that they should be required to pay benefits before anyone else. This argument is specious. The premium received by Donegal was clearly collected on the basis that its liability would be limited. To now impose greater liability on Donegal than it agreed to cover would be violative of public policy in that it would be in contravention of a valid contract. Moreover, Jones is being disingenuous when it suggests that Donegal was the only party who collected a premium. Jones itself collected a *de facto* premium in the form of lease payments for which it contractually agreed to provide liability coverage of one million dollars.

**16.** We note that PIGA made an independent assessment of its liability, and concluded that it was in fact liable as a primary insurer. Courts

Petitioner next argues that the decision of the Superior Court in this case was inconsistent with its decision in *Luko v. Lloyds' of London*, 393 Pa.Super 165, 573 A.2d 1139 (1990), alloc. denied, 526 Pa. 636, 637, 584 A.2d 319 (1990). We disagree.

In *Luko* the Superior Court held that since the excess policy there at issue contained a clause providing for the excess coverage to begin at a lower amount should there be no underlying insurance then the excess carrier's liability would begin at the lower amount once the primary carrier was declared insolvent. PIGA's liability was then limited to the minimum amount necessary to make the injured party whole. *See Blackwell v. Pennsylvania Insurance Guaranty Association*, 390 Pa.Super. 31, 37, 567 A.2d 1103, 1106 (1989).

In *Luko*, the Court interpreted the excess carrier's insurance contract as requiring such coverage. The Court did not make a determination as a matter of law that an excess carrier should automatically drop down. In this case, however, there is no provision in Donegal's policy which would justify accessing that policy until the contractual condition precedent is achieved, i.e. the payment of the primary coverage. Thus the decision in *Luko* is distinguishable and is not dispositive of the issue here.

Finally, Jones Leasing argues that the decision of the Superior Court is inconsistent with the manner in which other jurisdictions have resolved the issue. We are not persuaded by this argument for several reasons. First, two of the cases cited by appellant do not stand for the proposition cited and are thus inapplicable.[17] Second, three more of the cases cited have either been overruled on appeal or have

should accord great deference to administrative decisions made by an agency in its area of expertise. *Norfolk and Western Railway Company v. Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980).

17. *Mission National Insurance Co. v. Duke Transportation Co.*, 792 F.2d 550 (5th Cir.1986); *Geerdes v. St. Paul Fire & Marine Insurance Co.*, 128 Mich.App. 730, 341 N.W.2d 195 (1983).

been called into question by a later decision within the subject jurisdiction.[18] Third, of the remaining jurisdictions cited[19] we note that there are an equal if not greater number of jurisdictions which have decided this same question in a manner consistent with the view which we today express, see collected cases cited above, and we find this latter group to be more persuasive on this point.

For the above stated reasons the arguments of Jones Leasing are rejected.

Accordingly, we affirm the order of the Superior Court.

NIX, C.J., did not participate in the consideration or decision of this matter.

---

18. Appellants cite *Werner Industries Inc. v. First State Insurance Co.,* 217 N.J.Super. 436, 526 A.2d 236 (1987), which was overruled on appeal, *Werner Industries Inc. v. First State Insurance Co.,* 112 N.J. 30, 548 A.2d 188 (1988). Appellants also cite the cases of *American Lumberman's Mutual Casualty Co. v. Lumber Mutual Casualty Insurance Co.,* 251 A.D. 231, 295 N.Y.S. 321 (1937) and *Gladstone v. D.W. Ritter Co.,* 133 Misc.2d 922, 508 N.Y.S.2d 880 (1986), however these cases have been called into question by a more recent appellate Court decision of that same jurisdiction. See *Pergament Distributors Inc. v. Old Republic Insurance Co.,* 128 A.D.2d 760, 513 N.Y.S.2d 467 (1987), appeal denied, 70 N.Y.2d 607, 519 N.Y.S.2d 1031, 514 N.E.2d 389 (1987). We can only assume that appellant's failure to note these facts was due to inadvertence as opposed to an intent to mislead.

19. *Alabama Insurance Guaranty Association v. Magic City Trucking Service, Inc.,* Ala., 547 So.2d 849 (1989); *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982); *Donald B. MacNeal v. Interstate Fire & Casualty Co.,* 132 Ill.App.3d 564, 87 Ill.Dec. 794, 477 N.E.2d 1322 (1985); *Gulezian v. Lincoln Insurance Co.,* 399 Mass. 606, 506 N.E.2d 123 (1987); and *Lechner v. Scharrer,* 145 Wis.2d 667, 429 N.W.2d 491 (1988).