Mary Ann ASCHER, Administratrix
of the Estate of Greg Waller
Ascher, Appellee,

v.

PENNSYLVANIA INSURANCE GUAR-
ANTY ASSOCIATION Properly Known
as Pennsylvania Property and Casualty
Insurance Guaranty Association, Appel-
lant. (Two Cases).

Superior Court of Pennsylvania.

Argued June 16, 1998.
Filed Dec. 21, 1998.

G. Wayne Renneisen, Philadelphia, for appellant.

Pamela G. Shuman, Harrisburg, for appellee.

Before McEWEN, President Judge, and DEL SOLE and TAMILIA, JJ.

McEWEN, President Judge:

While the procedural and factual history of these consolidated appeals, which arise from a dispute as to the nature of appellant Pennsylvania Insurance Guaranty Association's liability for claims against an insolvent insurer, is unusually lengthy and complex, the pivotal issue for resolution by this Court is: What did our legislature intend when it provided that "as to any covered claims arising from a judgment under any decision, verdict or finding based on the default of the insolvent insurer or its failure to defend an insured, the association ... may apply to have such judgment set aside ... and SHALL BE permitted to defend against such claim on the merits." 40 P.S. § 1701.602(b) (emphasis supplied).

The Pennsylvania Property and Casualty Insurance Guaranty Association, formerly known as the Pennsylvania Insurance Guaranty Association (hereinafter "PIGA")[1], has taken the appeal at No. 535 Harrisburg 1997, from the order entered in this class action on April 30, 1997, which (1) granted summary judgment in favor of the representative plaintiff, appellee, Mary Ann Ascher, and against appellant, PIGA, (2) denied the motion for summary judgment filed by appellant, PIGA, and (3) ordered appellant to pay the attorneys' fees and expenses incurred by appellee. The appeal at No. 1060 Harrisburg 1997, has been taken from the order entered on September 19, 1997, as amended September 26, 1997, which awarded appellee interest and additional attorneys' fees in the amount of $77,902.50. For reasons appearing hereinafter, we are constrained to vacate and remand.

Appellee, Mary Ann Ascher, commenced the instant class action litigation against the Pennsylvania Insurance Guaranty Association (PIGA) by writ of summons filed on January 5, 1995. Appellee is the administratrix of the estate of her son, Gary Waller Ascher ("insured decedent"), who died on April 23, 1982, in a motor vehicle accident. At the time of the accident, Gary Ascher, a

---

**1.** The Pennsylvania Insurance Guaranty Association Act, Act of November 25, 1970, P.L. 716, No. 232, §§ 101 *et seq.*, 40 P.S. §§ 1701.101 *et seq.*, was repealed by the Pennsylvania Property & Casualty Insurance Guaranty Association Act, Act of December 18, 1992, No. 178, § 201, 40 P.S. § 991.18, which is applicable to insurers declared insolvent after December 18, 1992.

resident of Pennsylvania, was an insured under an insurance policy issued by State Automobile Insurance Association ("State Auto") in conformity with the provisions of the now repealed No Fault Act. Appellee filed the instant class action against PIGA to recover unpaid judgments and counsel fees awarded in a prior class action suit against State Auto for the recovery of postmortem work loss benefits, namely, *Ebersole v. State Auto Insurance Assn.* (No. 2939 S 1986 C.P. Dauph.).

The *Ebersole* case was commenced by the filing of a complaint in Dauphin County on August 20, 1986. On July 10, 1987, the distinguished Judge Warren G. Morgan granted the motion for class certification with David W. Ebersole as representative plaintiff and designated two subclasses of plaintiffs, both comprised of the estates of decedents that had not received work loss benefits. By order dated November 24, 1987, Judge Morgan granted the motion of State Auto for summary judgment against plaintiff Ebersole, finding that the claim of plaintiff Ebersole was barred by the statute of limitations since it had not been filed within two years of the last payment of no fault benefits arising other than from death. The court found that plaintiff Ebersole had received the last payment of no fault benefits on July 10, 1979, and had failed to file his claim prior to July

10, 1981, as required by 40 P.S. § 1009.106(c)(1)(repealed effective October 1, 1984). However, Judge Morgan entered a further order on November 24, 1987, granting the motion of Mary Ann Ascher to intervene as representative plaintiff. The court ruled that, despite the fact that the accident involving Mrs. Ascher's son had occurred more than four years before the *Ebersole* suit had been filed, the statute of limitations as to plaintiff Ascher had been tolled by the filing of the complaint in *Gabovitz v. State Auto. Insurance Ass'n.*, 362 Pa.Super. 17, 523 A.2d 403 (Pa.Super.1987), *allo. denied*, 516 Pa. 634, 533 A.2d 92 (1987), which had been filed on June 22, 1982, and terminated on October 26, 1987.[2] State Auto filed a motion for stay of proceedings on October 18, 1991, based on the order of the Department of Insurance of the State of Indiana entered October 15, 1991[3], which placed it in receivership under the supervision of a rehabilitator. This motion was subsequently denied[4], and counsel for State Auto was permitted to withdraw by order of the learned Judge Herbert A. Schaffner on October 24, 1991. This order also removed the *Ebersole* case from the November, 1991, civil trial list. The case proceeded to trial, however, in January of 1992, and it is undisputed that defendant State Auto, which was then in receivership, was not represented by counsel at trial. Jury verdicts were returned setting forth the

**2.** In *Gabovitz v. State Auto. Insurance Ass'n.*, 362 Pa.Super. 17, 523 A.2d 403 (Pa.Super.1987), *allo. denied*, 516 Pa. 634, 533 A.2d 92 (1987), this Court affirmed the order of Judge Morgan which revoked class certification and entered summary judgment in favor of State Auto and against plaintiff Gabovitz upon finding the claim of plaintiff Gabovitz to have been time barred. We note that *Gabovitz* was determined in *Ebersole* not to have tolled the statute of limitations as to plaintiff Ebersole, as *Gabovitz* was filed almost a year after the statute of limitations for plaintiff Ebersole had expired.

**3.** We note that the order of the Marion County Circuit Court of the State of Indiana, filed October 17, 1991, which is contained in the record as part of "Exhibit C" to the motion for summary judgment of appellant PIGA, *inter alia*, enjoined all State Auto policyholders, insured, creditors, etc ..., from the commencement and prosecution of class action suits against or involving State Auto. Moreover, the order stated that any person "seeking to commence, prosecute or continue" any such suit "is directed to do so in this court as part of the rehabilitation proceeding, or

... to seek leave of this court to institute or prosecute such action or proceeding elsewhere with prior notice given to the rehabilitator and his counsel." Appellee Ascher contends that notice was provided to State Auto as well as to the General Counsel of the Indiana Insolvency Office and that it was the duty of the rehabilitator to request a stay in Pennsylvania.

**4.** Neither the motion for stay of proceedings nor the disposition of this motion are reflected on the docket, however the motion is contained in the record as "Exhibit C" to the motion for summary judgment of appellant PIGA and the denial of this motion is noted in the application to withdraw as counsel, which is contained in the record as "Exhibit D" in the motion for summary judgment of appellant PIGA, and is also noted within the motion for summary judgment itself. Appellee acknowledges, in her brief before this Court, that the motion for stay was filed on or about October 18, 1991, and was subsequently denied by Judge Schaffner.

amount of work loss benefits and interest due each class member. The eminent Judge Jeannine Turgeon, by order of February 7, 1992, ordered (1) that the verdicts from trial be recorded by the prothonotary, and (2) that plaintiffs pay *pro rata* the paralegal and out-of-pocket expenses of plaintiffs' counsel. A few weeks thereafter, on February 26, 1992, Judge Turgeon ordered State Auto to pay $346,854.00 in plaintiffs' attorneys' fees. It is not disputed that ten months later State Auto was declared insolvent by the Indiana Insurance Commissioner on December 22, 1992.

As noted above, the instant action against PIGA was commenced on January 5, 1995, by writ of summons, with Mary Ann Ascher, who had been named representative plaintiff in *Ebersole*, again acting as representative plaintiff. Appellee Ascher filed a motion for class action certification on October 18, 1996. Prior to any ruling on the motion for class certification, appellant PIGA filed a motion for summary judgment on November 26, 1996, and a brief in support thereof on December 16, 1996. PIGA argued, essentially, that the claim of plaintiff Ascher for work loss benefits had not been filed within the two-year state of limitations which began to run under the No Fault Act on November 4, 1982, the date of the last payment of benefits for loss arising other than from death. PIGA further asserted that the *Gabovitz* action did not serve to toll the statute of limitations as to plaintiff Ascher, since the complaint in *Gabovitz* was invalid on its face since the averments therein revealed that the action was time barred. Appellee Ascher filed a cross-motion for summary judgment on January 3, 1997, in which she argued that the claims at issue had been finally litigated against State Auto and that PIGA had a statutory obligation to pay those claims with accrued interest and attorneys' fees.

The distinguished Judge Lawrence F. Clark, Jr., by order dated February 5, 1997, granted the motion of appellee for class certification, and the cross-motions for summary judgment were argued before an *en banc* panel of the Court of Common Pleas of Dauphin County on March 27, 1997. That court, on April 30, 1997, issued an order and opinion in which it (1) incorporated the opinion granting class certification, (2) granted the motion for summary judgment of appellee Ascher and (3) denied the motion for summary judgment filed by appellant PIGA. The parties were directed to comply with the orders of Judge Turgeon of February 7, 1992, and February 26, 1992, and appellee was granted leave to submit requests for additional interest, attorneys' fees and costs. Appellee filed a motion for additional interest, attorneys' fees and costs on May 19, 1997, and by order dated September 19, 1997, and amended September 26, 1997, Judge Clark ordered PIGA to pay interest at the rate of 18% *per annum* on the amount of the verdicts in *Ebersole* from the dates determined by the jury up to the date of payment, excluding the period of State Auto's receivership from October 15, 1991, until it was declared insolvent on December 22, 1992. The court also ordered PIGA to pay additional attorneys' fees in the amount of $77,902.50.

The order of April 30, 1997, granting summary judgment in favor of appellee is the subject of the appeal at No. 535 Harrisburg 1997, and the orders of September 19, 1997, and September 26, 1997, providing for interest and attorneys' fees, are the subject of the appeal at No. 1060 Harrisburg 1997.

## I. APPEAL NO. 535 HARRISBURG 1997

Pennsylvania Insurance Guaranty Association ("PIGA"), appellant at No. 535 Harrisburg 1997, has framed the following questions for our review:

A. Is the Pennsylvania Property and Casualty Insurance Guaranty Association ("PIGA") deemed to be State Automobile Insurance Association ("State Auto") in the instant case such that PIGA is obligated to pay the judgments as adjudicated against State Auto in the case of *Ebersole v. State Auto. Ins. Ass'n* ?

1. Did the trial court err in holding that it was bound under the rule of coordinate jurisdiction by the decisions of the Honorable Warren G. Morgan with respect to State Auto in *Ebersole* ?

2. Was it erroneous for the trial court to hold that the doctrine of *res judicata* precludes PIGA from asserting the stat-

ute of limitations defense in the instant case?

3. Did the trial court err in holding that *Matusz v. Safeguard Mut. Ins. Co.*, 340 Pa.Super. 116, 489 A.2d 868 (1985), precludes PIGA from arguing that it should not be held responsible for the obligations of State Auto as determined in *Ebersole* ?

B. Did the *Ebersole* trial court err in its application of *Gabovitz v. State Auto. Ins. Ass'n*, 362 Pa.Super. 17, 523 A.2d 403, *appeal denied*, 516 Pa. 634, 533 A.2d 92 (1987), and *Cunningham v. Insurance Co. of N. Amer.*, 515 Pa. 486, 530 A.2d 407 (1987), *cert. denied*, 484 U.S. 1008 [108 S.Ct. 704, 98 L.Ed.2d 655] (1988), when it granted appellees' motion for class action certification and when it determined that Mary Ann Ascher was a proper representative?

1. Was it erroneous for the trial court in *Ebersole* to use a prior class action to toll the statute of limitations for the *Ebersole* class action?

2. Did the *Ebersole* trial court err in determining that the filing of the *Gabovitz* class action complaint tolled the statute of limitations for the purported class members in *Ebersole* ?

3. Should the *Ebersole* trial court have held that the claims of twenty-one class members were barred by the statute of limitations, regardless of the tolling effect of the *Gabovitz* class action complaint?

C. Did the trial court inappropriately apply the award of attorneys fees in *Ebersole* as against PIGA?

D. Did the trial court inappropriately apply the award of interest in *Ebersole* as against PIGA?

## II. APPEAL NO. 1060 HARRISBURG 1997

PIGA, appellant at No. 1060 Harrisburg 1997, has framed the following questions for our review:

A. Was the trial court incorrect in its assessment of interest against PIGA?

B. Was the trial court incorrect in imposing additional attorney's fees upon PIGA, and was its method of calculation inappropriate?

## III. DISCUSSION

### A. APPEAL NO. 535 HARRISBURG 1997

Our scope of review of an order granting summary judgment is plenary:

> In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. *Dorohovich v. West American Insurance Co.*, 403 Pa.Super. 412, 589 A.2d 252 (1991). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. *Godlewski v. Pars Manufacturing Co.*, 408 Pa.Super. 425, 597 A.2d 106 (1991). Summary judgment should only be granted in those cases which are free and clear from doubt. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983).
>
> Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and [that] the moving party is entitled to judgment as a matter of law.

*Acme Markets v. Federal Armored Express*, 437 Pa.Super. 41, 648 A.2d 1218, 1220 (Pa.Super.1994), quoting *American States Ins. Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 628 A.2d 880, 885–86 (Pa.Super.1993). *Accord: Mellon v. Barre–National Drug Co.*, 431 Pa.Super. 175, 636 A.2d 187, 191 (Pa.Super.1993), *allo. denied*, 538 Pa. 658, 648 A.2d 789 (1994).

The statutory purpose of PIGA is to stand in the place of an insolvent insurer:

> The stated purpose of the Pennsylvania Insurance Guaranty Association is to cover claims of an insolvent insurer. 40 P.S. § 1701.201(b)(1)(i). For this reason the Association shall "be deemed the insurer

to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent." 40 P.S. § 1701.201(b)(1)(ii). The only limitation placed upon an injured party is that the Association's own limitations of liability apply rather than those of the insolvent insurer. Thus, by the clear and unambiguous terms of the statute, PIGA is deemed to be an insurer and is placed in the stead of the insolvent insurer, with all of that insurer's rights and duties and obligations.

*Donegal Mutual Insurance Co. v. Long*, 528 Pa. 295, 300–01, 597 A.2d 1124, 1127 (1991)(footnotes omitted). *See also: P & F Industries, Inc. v. Pennsylvania Insurance Guaranty Ass'n.*, 443 Pa.Super. 279, 661 A.2d 414, 415 (Pa.Super.1995), *allo. denied*, 543 Pa. 715, 672 A.2d 308 (1996); *Guttman Oil Co. v. Pennsylvania Insurance Guaranty Ass'n.*, 429 Pa.Super. 523, 632 A.2d 1345, 1348 (Pa.Super.1993), *allo. denied*, 537 Pa. 663, 644 A.2d 1200 (1994). Thus, appellee Ascher contends that since PIGA is statutorily deemed to be State Auto from the time State Auto was declared insolvent on December 22, 1992, PIGA is barred, just as State Auto would be, from challenging the unappealed verdicts entered against State Auto in *Ebersole*. Appellant argues, however, that "PIGA was not a party to the *Ebersole* action, State Auto was unrepresented at trial in *Ebersole*, the *Ebersole* Court did not address the timeliness of any claims other than those of Mr. Ebersole and Mrs. Ascher, and the PIGA Act, 40 P.S. §§ 1701.101–.605, was not addressed in *Ebersole*."

■ Appellant argues, and we agree, that, pursuant to Section 1701.602(b) of the Pennsylvania Insurance Guaranty Association Act, appellant is authorized to request that the *Ebersole* Court set aside the judgment entered against State Auto and allow appellant to present a defense on the merits to the claims asserted by appellee. The applicable Section provides:

(b) As to any covered claims arising from a judgment under any decision, verdict or finding based on the default of the insol-

vent insurer or its failure to defend an insured, the association either on its own behalf or on behalf of such insured, may apply to have such judgment, order, decision, verdict or finding set aside **by the same court that made such judgment,** order, decision, verdict or finding **and shall be permitted to defend against such claim on the merits.**

40 P.S. § 1701.602(b)(emphasis supplied).[5] State Auto, which had been placed in receivership on October 15, 1991, had requested a stay of proceedings on October 18, 1991, which, after denial, resulted in the withdrawal of counsel on October 24, 1991. Thus, the judgment arose from a "verdict ... based on the default of the insolvent insurer," and would appear to be subject to a motion to vacate pursuant to Section 1701.602(b).

Appellant asserts that the trial court erred when it relied on the rule of coordinate jurisdiction and the doctrine of *res judicata* and held that PIGA was bound by the holdings in *Ebersole* despite Section 1701.602(b). Ordinarily, "judges of coordinate jurisdiction sitting in the same case should not overrule a prior decision of another judge of that jurisdiction." *Riccio v. American Republic Insurance Co.*, 550 Pa. 254, 260, 705 A.2d 422, 425 (1997) ("coordinate jurisdiction rule falls within the 'law of the case' doctrine"). *Accord: Alco Parking v. Public Parking Authority*, 706 A.2d 343, 350 (Pa.Super.1998); *Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025, 1031 (Pa.Super.1993), *allo. denied*, 538 Pa. 663, 649 A.2d 666 (1994).

In order for res judicata to bar relitigation of an action, there must be concurrence of four conditions:

1. Identity of the things sued upon.

2. Identity of the cause of action.

3. Identity of the parties to the action.

4. Identity of the quality or capacity of the parties.

Once the concurrence of the identities is found to exist, **it must be determined whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties ac-**

5. This Section has been recodified at 40 P.S. § 991.1819(b).

**tually had an opportunity to appear and assert their rights.**

*Roberts v. Estate of Pursley,* 700 A.2d 475, 480 (Pa.Super.1997) (citations omitted)(emphasis supplied).

While we are not convinced that the coordinate jurisdiction rule is applicable to the instant case since the issue of the liability of PIGA is not identical to the issues presented to the trial judge in *Ebersole,* the legislature has specifically addressed the question of whether PIGA may relitigate issues which would otherwise appear to be finally litigated.[6]

Instantly, appellant PIGA asserts that the *Ebersole* Court erred in its decision that the prior class action of *Gabovitz v. State Auto Insurance Ass'n., supra,* tolled the statute of limitations in *Ebersole.* Appellant further argues that, since appellee Ascher last received no fault benefits from losses arising other than from death on November 4, 1982, the two-year statute of limitations under 40 P.S. § 1009.106(c)(repealed 1984) would have expired on November 4, 1984, approximately one year and nine months before *Ebersole* was filed on August 20, 1986. Appellant contends that the *Ebersole* Court erred in holding that the *Gabovitz* case tolled the statute of limitations because, under *Cunningham v. Insurance Co. of North America,* 515 Pa. 486, 530 A.2d 407 (1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988), a complaint must be valid on its face to toll the statute of limitations. Therefore, without the tolling effect of *Gabovitz,* the claim of appellee Ascher in *Ebersole* was time barred and consequently appellee Ascher could not be a proper class representative and the trial court in the instant case should have denied class action certification for this reason. In the alternative, appellant argues that, even if the *Gabovitz* action properly tolled the statute of limitations in *Ebersole,*

the *Ebersole* Court erred in that eleven claims in *Ebersole* were time barred prior to the filing of *Gabovitz,* and ten additional claims in *Ebersole* became time-barred during the period between the decertification of *Gabovitz* by Judge Morgan and the filing of the *Ebersole* action. We believe that the express provisions of the PIGA Act, as well as the public policy underlying the Act, require that we vacate the judgment entered upon the jury verdict and remand to permit appellant "to defend against such claims on the merits."

■ Appellant further challenges the award of attorneys' fees and interest in *Ebersole,* as well as the respective methods of calculation. In *Matusz v. Safeguard Mutual Insurance Co.,* 340 Pa.Super. 116, 489 A.2d 868 (Pa.Super.1985), this Court determined that the PIGA Act must be read in concert with the applicable No Fault Insurance Act so that, in order to make the unpaid claimant whole, PIGA is responsible not only for the underlying insurance claim of the insolvent company, but also for attorneys' fees and interest.

If we interpret the PIGA Act and No-fault Insurance Act as relating to the same class of persons – victims of accidental injuries, they would be construed in *pari materia* and the two statutes should be construed as one. 1 Pa.C.S. § 1932, Statutes in Pari Materia. Thus, provisions of the no-fault law for the payment of counsel fees, costs and interest can be read in concert with the PIGA provision which states as its purpose "To provide a means for payment of covered claims, ... and to avoid financial loss to claimants ... as a result of [insurer] insolvency," thus requiring that we allow for the payment of such additional benefits to the claimant. Moreover, one can assume that the insurer faced with insolvency is more likely to resist the payment of claims, thereby delaying the pay-

---

6. Moreover, the decision of this Court in *Matusz v. Safeguard Mutual Insurance Co.,* 340 Pa.Super. 116, 489 A.2d 868 (Pa.Super.1985), discussed *infra,* does not preclude appellant from asserting an affirmative defense regarding the statute of limitations. In *Matusz,* PIGA did not assert the defense, and argued only that it was not obliged to pay attorneys' fees, costs, and interest. Moreover, the insolvent insurer in *Matusz* was placed

under suspension **after** the arbitration hearing at which it was held liable for the claims at issue. Conversely, the insolvent insurer in the case at bar, namely State Auto, was under the supervision of a rehabilitator **prior** to trial and, as noted above, was unable to appear or present any defense at trial or undertake an appeal from the judgment entered on the verdict.

ment of the claims and often forcing the claimant to secure counsel to assert the claim. Under these circumstances, fees and interest clearly arise out of the claim and must be recouped in order to allow the claimant to "avoid financial loss" as a result of the insolvency. The law creating PIGA provides that the association shall be "deemed the insurer" and have "all rights, duties, and obligations of the insolvent insurer." To now deny appellee properly assessed attorney fees, costs and interest would, we think, improperly excuse PIGA from its full statutorily imposed duties and obligations.

*Matusz v. Safeguard Mutual Insurance Co., supra,* 489 A.2d at 870. Thus, should PIGA be found liable for the insurance claims in the instant matter, appellee would be entitled to "properly assessed attorneys' fees, costs, and interest." *Id.* at 120, 489 A.2d 868. Instantly, however, appellant PIGA was never afforded the opportunity to argue the statute of limitations defense or the alleged unreasonableness of the use of a multiplier in calculating attorneys' fees in *Ebersole.* Accordingly, these issues may be presented to the court upon remand.[7] *See: Lee v. Safeguard Mutual Insurance Co.,* 379 Pa.Super. 104, 549 A.2d 927, 933 (Pa.Super.1988), *allo. denied,* 522 Pa. 596, 562 A.2d 320 (1989); *Fasciana v. Aetna Life & Casualty Co.,* 343 Pa.Super. 1, 493 A.2d 772, 774 (Pa.Super.1985).

## B. APPEAL AT NO. 1060 HARRISBURG 1997

Appellant, in the appeal at No. 1060 Harrisburg 1997, challenges the September 19, 1997, order of the trial court which (1) ordered PIGA to pay interest at a rate of 18%

*per annum* on the amount of the verdicts in *Ebersole,* from the date of State Auto's insolvency on December 22, 1992, to the date of payment, (2) ordered PIGA to pay interest at a rate of 6% *per annum* on the amount of the attorneys' fees awarded in *Ebersole,* from the date of insolvency to the date of payment, and (3) ordered PIGA to pay additional attorneys' fees which, by virtue of the amended order of September 26, 1997, totaled $77,-902.50. Specifically, appellant argues that the trial court was incorrect in its assessment of interest against PIGA and in its imposition and calculation of attorneys' fees.

In *Ebersole,* the jury awarded plaintiffs 18% interest on their unpaid claims under a provision of the No Fault Act which was upheld by the Pennsylvania Supreme Court in *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981)(where payment is overdue, 18% interest is owed on that payment regardless of the "good faith" of the insurer or the "reasonable cause" for the delay). The trial court properly imputed this obligation to PIGA, and correctly ruled that the interest would not begin to accrue until December 22, 1992, the date State Auto became insolvent, since neither State Auto nor PIGA could pay the claim during the period of the insolvency proceedings. *Matusz v. Safeguard Mutual Insurance Co., supra,* 489 A.2d at 871. Moreover, the trial court could properly determine that appellee was entitled to 6% interest *per annum* on the award of attorneys' fees, which was not subject to the statutory 18% interest rate. As this Court has previously noted:

Section 8101 of the Judiciary Act provides:

Except as otherwise provided by another statute, a judgment for a specific sum

---

7. We decline, as appellee suggests, to view the initial order of the trial court as interlocutory because the court "did not determine the full extent of the damages." As this Court has recently noted, "It is well established that an order granting summary judgment is final and appealable.... Therefore, to preserve the right to appeal once summary judgment is granted, an appeal must be filed within thirty (30) days after the entry of that order." *Tohan v. Owens–Corning Fiberglas Corp.,* 696 A.2d 1195, 1200 (Pa.Super.1997), *allo. denied,* 553 Pa. 700, 718 A.2d 786 (1998) (citations omitted). Instantly, appellant timely filed, on May 30, 1997, an appeal

from the trial court order of April 30, 1997, which granted summary judgment. Moreover, the case relied on by appellee, namely, *Brown v. State Farm Mutual Auto. Insurance Co.,* 326 Pa.Super. 489, 474 A.2d 346 (Pa.Super.1984), is distinguishable in that the appeal in *Brown* was interlocutory because the trial court order at issue therein granted summary judgment as to the issue of liability only. Conversely, the initial trial court order in the case at bar awarded damages as imputed from the *Ebersole* verdicts, and the court subsequently addressed the collateral issues of interest and additional attorneys' fees.

of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S. § 8101. In *Kessler v. Old Guard Mutual Insurance Company*, 391 Pa.Super. 175, 570 A.2d 569 (1990), this Court explained:

> "the general rule is that a plaintiff is entitled to interest on a judgment from the date of the verdict." *Sands v. Pennsylvania Insurance Guaranty Association*, 283 Pa.Super. 217, 227, 423 A.2d 1224, 1229 (1980). See: 42 Pa.C.S. § 8101. "[F]or purposes of computing interest, judgment and verdict are synonymous, and the date from which interest accrues is the date of verdict, not the date judgment is finally entered." *Incollingo v. Ewing*, 474 Pa. 527, 537, 379 A.2d 79, 84 (1977).

*Id.* at 571–72 [570 A.2d 569] (footnote omitted). Moreover, this Court stated that, "where the amount of a verdict has been corrected upward by the trial court to reflect the correct amount due, interest should begin to run on the correct amount from the date of the verdict." *Id.* at 572.

*Johnson v. Singleton*, 442 Pa.Super. 206, 658 A.2d 1372, 1373 (Pa.Super.1995).

 We are unable to conclude, however, that the trial court could properly assess **additional** attorneys' fees under Section 1009.107(3) of the No Fault Act, which allowed the court to impose "reasonable" attorneys' fees based on "actual time expended" where the court determined that the obligor had denied a no fault claim "without reasonable foundation." The basis of the claim in the instant litigation was the PIGA Act and **not** the No Fault Act. Thus, Section 1009.107(3) is inapplicable to these proceedings and the award of additional attorneys fees in this action, allegedly pursuant to the No Fault Act, was error. However, upon remand, appellee may be entitled to an award of reasonable counsel fees pursuant to the No Fault Act as that Act will be the focus of the proceedings in which appellant will "defend against such claim on the merits."

Having determined that appellant should be permitted to defend against the claims of appellee on the merits, we are obliged to vacate and remand for further proceedings and to allow for the recalculation, if necessary, of damages, counsel fees, interest, and costs.

Orders vacated. Case remanded. Jurisdiction relinquished.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, J., dissenting:

I dissent for three reasons. First, my review of the record reveals that PIGA never raised the application of Section 1701.602(b) [1], upon which the Majority bases its holding. PIGA raised several complex issues in its 74 pages of briefs; however, these issues were limited to whether PIGA should be deemed to be State Auto, whether the class certification issue was properly disposed of, and whether the grant of attorney fees and interest was proper. PIGA never raised the application of the statute upon which the Majority bases its holding. As a result, Appellees have never had an opportunity to argue its inapplicability. Apparently PIGA concluded, as I do, that the statute is of no relevance to this case.

Secondly, the Majority misinterprets the text of the above-cited statute. The Majority claims "the judgment arose from a 'verdict ... based on the default of the insolvent insurer'." Op. at 1083. In the underlying case, there was no default. A default judgment is a judgment "where the defendant usually does not appear and either has or takes no opportunity the argue his case." *Kurtz v. Allied Corp.*, 127 Pa.Cmwlth. 384, 561 A.2d 1294 (Pa.Commw.1989). There was no default in the underlying *Ebersole* case. Rather, State Auto was represented by counsel from the time of commencement of the litigation in 1986 until counsel's withdrawal in October, 1991. A judgment was entered pursuant to jury verdicts after a trial, not pursuant to a default. Thus, I conclude this section is not applicable.

---

**1.** This section was recodified at 40 P.S. § 991.1819(b).

Finally, assuming *arguendo* that the statute is applicable to this case, I agree that the Majority is correct in its assessment that an underlying default judgment "... would appear to be subject to a motion to vacate pursuant to Section 1701.602(b)." Op. at 1083. I doubt that such a motion would be successful almost seven years after the judgment was rendered. However, PIGA has not applied to have the underlying judgment set aside as § 1701.602(b) requires. Rather, it seeks to mount a collateral attack on a prior decision rendered almost seven years ago.

The Guaranty Fund was established to provide protection for insureds and third parties who suffer harm as a result of insurance carriers who become insolvent. Inherent in this protection is a desire to timely compensate those who have been injured. This goal would not be achieved by the Majority's decision to permit a collateral attack on an underlying judgment not authorized by statute. For these reasons, I dissent and would affirm the trial court decision.