## Hall v. MPH Transportation Inc.

C.P. of Lackawanna County, no. 00-CV-2612.

*John R. Lenahan Jr.* and *Gregory A. Germain,* for plaintiffs.

*William G. Cilingin,* for defendant, MHP Transportation Inc.

*James A. Doherty,* for defendant Joseph.

NEALON, *J.,* May 1, 2002—The Pennsylvania Property and Casualty Insurance Guaranty Association has filed a petition to open a default judgment that was entered against defendant, Albert W. Joseph, on January 19, 2001. PIGA contends that 40 P.S. §991.1819(b) grants it an "automatic right" to open default judgments regardless of the timeliness of its petition to open or the legitimacy of the excuse for the initial default. Although PIGA has an absolute right under section 1819(b) to set aside any default judgment that was entered against an insurer while it was in rehabilitation or receivership and unable to defend its insured, PIGA's qualified ability to open default judgments that were entered while the insurer was solvent and capable of filing a responsive pleading is subject to the criteria which customarily govern the opening of default judgments. Since more than four months elapsed between the time that the insurer received notice of the default judgment and the date that it was placed into rehabilitation, and PIGA delayed an additional 41 days before it filed the petition to open, neither PIGA nor the defaulting defendant has established that the petition to open was promptly filed under Pennsylvania law. Therefore, the petition to open the default judgment will be denied.

## I. FACTUAL BACKGROUND

On May 30, 2000, plaintiffs, Adina Hall and Albert W. Joseph, commenced this litigation pursuant to the

Wrongful Death and Survival Acts, 42 Pa.C.S. §§8301-8302, based upon an incident which allegedly occurred on May 30, 1999, on Interstate Route 40 in Brownsville, Tennessee. On the date of the accident, Albert was reportedly operating a tractor-trailer as an agent of defendant, MPH Transportation Inc. d/b/a MPH Inc., while his wife, Carolyn Y. Joseph, was a passenger in the tractor cab. As a result of Albert's alleged negligence, his wife fell from the moving tractor and died from multiple head trauma on May 31, 1999. (See plaintiffs' complaint, ¶¶5-11.)

In their original complaint, Adina and Albert named MPH and Albert as defendants.[1] Albert was personally served with the complaint on June 28, 2000, and after the complaint was reinstated on June 29, 2000 and July 28, 2000, MPH was likewise served with initial process on August 15, 2000. Reliance Insurance Company insured MPH under a commercial general liability and commercial truckers policy (see petition to open default judgment, ¶5), and retained counsel to defend MPH's interests in this litigation. On August 28, 2000, the firm of Mintzer, Sarowitz, Zeris & Ledva entered its appearance as counsel for MPH. However, Reliance Insurance Company neglected to secure counsel for NTH's agent, Albert.

Consequently, by letter dated October 30, 2000, Albert advised Reliance of the pendency of this lawsuit against him and requested that it furnish him with a defense.

---

1. The purported lessor of the tractor-trailer, S&M Leasing Inc., was initially named as a defendant as well, but by stipulation dated February 15, 2001, S&M Leasing Inc. was dismissed without prejudice.

Albert's correspondence was received by Reliance at its Lake Mary, Florida, office on November 3, 2000. (See petition to open, exhibit B, p. 1.) On November 7, 2000, Reliance's claims handling office in Orlando, Florida, forwarded a letter to Albert indicating that it could not locate a claim and requesting that Albert provide "more details of this loss." (*Id.,* exhibit C, p. 1.) At that time, Reliance did not deny coverage for Albert nor did it offer to defend his interests pursuant to a reservation of rights.

On January 4, 2001, counsel for plaintiffs filed a 10-day notice of an intent to enter a default judgment against Albert for failing to answer the complaint that had been served on June 28, 2000. Plaintiffs' 10-day notice was forwarded to Albert via certified mail, and as reflected by the certified mail return receipt, that notice was received by him on January 5, 2001. On January 9, 2001, Albert forwarded a certified letter to Reliance enclosing a copy of the 10-day notice of intent to enter a default judgment and renewing his request that Reliance provide counsel to represent him in this case. (*Id.,* exhibit B, p. 2.) Although Albert's correspondence was admittedly received by Reliance, it took no action to protect his rights or otherwise oppose the impending entry of a default judgment.

In the absence of any responsive pleading by Albert or his counsel, a default judgment was entered against Albert on January 19, 2001. By certified letter dated January 21, 2001, Albert transmitted a copy of the default judgment to Reliance. (*Id.,* p. 3.) Once again, Reliance failed to furnish Albert with a defense. Despite the fact

that Reliance had secured counsel for MPH and was actively defending this death case, it forwarded a form letter to Albert on January 26, 2001, in which it returned Albert's "correspondence because we cannot identify it as relating to any of our claims from the information provided." (*Id.,* exhibit C, p. 2.) In response, Albert mailed yet another certified letter to Reliance on February 7, 2001, in which he stated:

"I have received your letter dated January 26, 2001. I am resending to you copies of the letters I had sent to you already on October 30, 2000, January 9, 2001, and January 21, 2001. I do not understand why you are sending this back to me. The papers I sent you had the information you are asking for, but I am sending this to you again.

"The accident happened on May 31, 1999. The claimant is the estate of Carolyn Joseph, address R.R. 3, Rt. 6, Bx 3599, Factoryville, PA 18419. Her SS no. is 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. Reliance provided truckers insurance which covers me through MPH Inc. MPH's address is 436 Spruce Street, Scranton, Pennsylvania.

"I am again requesting again that you provide me with proper representation in this matter.

"I do not know why you claim to need this, but I found out that your claim number is 082 99 54112 146. The policy number is SK3005209." (*Id.,* exhibit B, pp. 4-5.)

On February 14, 2001, Reliance responded to Albert's request by returning his correspondence in another form letter in which it asserted that it could not identify it as related to one of Reliance's claims. Reliance's letter of February 14, 2001, was identical to its earlier standard-

ized note dated January 26, 2001, with the exception that the latter correspondence included a post-script stating "[t]his claim is not handled in this office. Please send all correspondence to Reliance Insurance, 620 Freedom Business Center Dr., King of Prussia, PA 19406." (*Id.,* exhibit D, p. 2.) In reply, Albert mailed a handwritten note that was received by Reliance's Valley Forge claims office on February 20, 2001, and in which he stated "here are more documents forwarded to me. I don't understand why you are not providing me with legal counsel. I have asked over and over. However, again your claim no. is 0829954112146 and policy no. is SK3005209." (*Id.,* p. 1.) Nevertheless, Reliance again failed to provide Albert with legal representation and neglected to make any effort to timely petition the court to open the default judgment which had been entered against him on January 19, 2001.

On March 7, 2001, Judge Trish Corbett severed plaintiffs' defaulted claims against Albert from those contested claims which were pending against MPH. By memorandum and order dated March 16, 2001, Judge Carmen D. Minora denied MPH's preliminary objections that had been submitted by the Mintzer firm. On April 5, 2001, plaintiffs filed a "motion to amend reflecting substitution of administrator of the estate of Carolyn Y. Joseph," and on that same date, Judge Minora issued an order directing "that the caption in this matter is amended to substitute John M. Lanza as co-administrator of the estate of Carolyn Y. Joseph in place of plaintiff, Albert W. Joseph." On May 8, 2001, counsel for the plaintiffs circulated a certificate of readiness with respect to the severed claims against Albert and advised Albert of the

intention to file the same within 15 days pursuant to Lacka. Co. R.C.P. 214(a). (See plaintiffs' brief in opposition, exhibit E.)

On May 15, 2001, Reliance forwarded a letter to Albert advising him that it had "recently been informed" that Albert had been "served with suit papers" in this action. (*Id.,* exhibit D.) Reliance further advised Albert that it was providing him with a defense "pursuant to a full reservation of rights" since it "seriously doubt[ed] whether [Albert was] entitled to a defense or indemnity under the Reliance policy issued to MPH . . . ." (*Id.,* p. 1.) Throughout its reservation of rights letter, Reliance repeatedly stated that "[c]overage does not exist" because Albert is "not an insured under the Reliance policy," the wrongful death claim "does not fall within the insuring agreement or is precluded by one of the policy exclusions," and Albert had breached the suit notice provision of the policy by allegedly neglecting to notify Reliance of the lawsuit until February 20, 2001. (*Id.,* pp. 6-7, 11-13.)

On May 23, 2001, counsel for plaintiffs filed a certificate of readiness to have plaintiffs' defaulted claims against Albert scheduled for a non-jury trial on damages. As of that date, no attorney had yet to enter an appearance to defend Albert's interests in this litigation. In addition, no rehabilitation proceeding had been initiated against Reliance during the seven-month period between the time that Albert first notified Reliance about the lawsuit and the date that plaintiffs certified the defaulted claims for trial.

More than four months after the entry of the default judgment, the law firm of Gibley & McWilliams P.C.,

entered its appearance on behalf of Albert on May 29, 2001. On that same date, Reliance was placed into rehabilitation by the Pennsylvania Insurance Commissioner and all actions involving Reliance were stayed.[2] (See petition to open, ¶18.) Based upon the certificate of readiness that had been filed in May 2001, the court administrator scheduled a non-jury trial on damages against Albert for September 2001, but that bench trial was postponed due to the Commonwealth Court stay order. On December 28, 2001, the Commonwealth Court granted PIGA's petition to intervene in *Koken, supra,* and issued a 30-day stay "from January 2, 2002, through February 1, 2002, in all proceedings in which Reliance Insurance Company . . . is obligated to defend any party in any court of this Commonwealth." (See defendant's brief in support, exhibit E, pp. 1-2.)

Following the expiration of that stay on February 1, 2002, PIGA promptly retained the firm of Naulty, Scariczmazza & McDevitt Ltd. to defend MPH and the Naulty firm entered its appearance as counsel for MPH on February 11, 2002. PIGA did not secure counsel for Albert until March 14, 2002, at which time Albert's current counsel of record entered his appearance in substi-

---

2. In its petition to open, PIGA avers that a 90-day stay order was entered on May 29, 2001. (See petition to open, ¶18.) However, in *Koken v. Reliance Insurance Co.,* 784 A.2d 209, 210-11(Pa. Commw. 2001), the Commonwealth Court indicated that a 60-day stay order was entered via paragraph 22 of its earlier order of May 29, 2001. In *Koken,* the Commonwealth Court extended that stay on August 2, 2001, for an additional 180 days for certain cases and proceedings that were pending in the federal courts or outside the Commonwealth of Pennsylvania. *Id.* at 211-13. See also, *Rewerts v. Reliance Insurance Co.,* 170 F. Supp.2d 847, 848 (C.D. Ill. 2001).

tution for Gibley & McWilliams P.C. Albert's new counsel contemporaneously filed the instant petition to open default judgment which was made returnable for a hearing on April 24, 2002. (See letter from James A. Doherty Jr., Esquire, dated April 30, 2002, stating that "[t]he petition to open the judgment was filed immediately after said counsel received the file from PIGA.")

PIGA asserts that "Reliance did not receive any written request or other request to defend Albert Joseph until after the default judgment had already been taken." (See defendant's brief in support, p. 5.) PIGA's contention in that regard is contradicted by its own supporting exhibits which clearly document that Albert made at least two written requests for a defense and legal representation before the default judgment was entered. (*Id.*, exhibit B, pp. 1-2.) PIGA further contends that 40 P.S. §991.1819(b) grants it an "automatic right" to open a default judgment without having to demonstrate that (1) the petition to open was promptly filed, (2) it has a meritorious defense to plaintiffs' claims and (3) there is a reasonable excuse for failing to answer the complaint. (*Id.*, pp. 10-12, 15.)

Plaintiffs counter that 40 P.S. §991.1819(b) applies only to default judgments involving a "covered claim" which is defined by 40 P.S. §991.1802 as any unpaid claim "which arises out of and is within the coverage" of the insolvent insurer's policy. Since Reliance denied coverage in its letter of May 15, 2001, and provided Albert with a defense subject to a full reservation of rights, plaintiffs submit that their claims cannot be regarded as "covered" so as to fall within the ambit of section 1819(b).

Plaintiffs further maintain that section 1819(b) merely governs default judgments entered against an insolvent insurer while it is in rehabilitation or insolvency and does not apply to default judgments that are granted while the insurer is solvent. Additionally, the plaintiffs posit that they acted in reliance upon the validity of the default judgment by severing the claims against Albert and MPH, dropping S&M Leasing Inc. as a defendant and certifying the severed action against Albert for a bench trial. Last, plaintiffs argue that PIGA cannot establish the three factors necessary for the opening of a default judgment.

PIGA filed its supporting brief on April 15, 2002, and plaintiffs submitted their brief in opposition on April 23, 2002. Oral argument was conducted on April 24, 2002, and both parties presented lengthy "letter briefs" on April 25, 2002, April 30, 2002, and May 1, 2002. Following the filing of those materials, this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Criteria for Opening of Default Judgment*

A petition to open a default judgment is recognized as an appeal to the equitable powers of the court. *Allegheny Hydro No. 1 v. American Line Builders Inc.,* 722 A.2d 189, 191 (Pa. Super. 1998); *Sparaney v. County of Lackawanna,* 101 Lacka. Jur. 433, 435 (2000), *aff'd,* 785 A.2d 180 (Pa. Commw. 2001). In general, a default judgment may be opened when the moving party establishes the following three requirements: (1) a prompt filing of the petition to open the default judgment; (2) a meritori-

ous defense to the underlying claim; and (3) a reasonable excuse or explanation for its failure to file a timely responsive pleading. *Cintas Corp. v. Lee's Cleaning Service,* 549 Pa. 84, 93-94, 700 A.2d 915, 919 (1997); *Dumoff v. Spencer,* 754 A.2d 1280, 1281-82 (Pa. Super. 2000).

"The trial court cannot open a default judgment based upon the 'equities' of the case when the defendant has failed to establish all three of the required criteria." *Flynn v. Casa Di Bertacchi Corp.,* 449 Pa. Super. 606, 674 A.2d 1099, 1103 (1996); *Castings Condominium Association Inc. v. Klein,* 444 Pa. Super. 68, 77, 663 A.2d 220, 225 (1995). If the court considers the three elements identified above, it need not conduct a separate inquiry regarding the alleged prejudice to the parties since the tripartite, test constitutes the governing equitable analysis. *Flynn v. American West Airlines,* 742 A.2d 695, 699-700 (Pa. Super. 1999); *Allegheny Hydro 1,* 722 A.2d at 191-92. Accord *Dumoff,* 754 A.2d at 1283 ("after reviewing applicable case law regarding the untimely filing of a petition to open judgment, we find that prejudice is not a separate element examined by the courts when [defendant] did not establish all three requirements of the test to open the default judgment"). PIGA maintains that it is not required to satisfy the foregoing criteria since it possesses an absolute right to set aside default judgments under 40 P.S. §991.1819(b).

(B) *PIGA's Ability To Open Default Judgment*

PIGA was created by the Pennsylvania Insurance Guaranty Association Act, Act of November 25, 1970, P.L. 716,

no. 232, §101 et seq. 40 P.S. §1701.101 et seq., which was later repealed and replaced by the Pennsylvania Property and Casualty Insurance Guaranty Association Act, Act of December 18, 1992, no. 178, §201, 40 P.S. §991.1801 et seq. See *Ascher v. Pennsylvania Insurance Guaranty Association,* 722 A.2d 1078, 1079 n.1 (Pa. Super. 1998), *app. denied,* 561 Pa. 650, 747 A.2d 896 (1999). Section 1801 of the Act states that it was enacted to provide a means for the payment of covered claims under policies issued by insolvent insurers, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants and insureds as a result of the insolvency of an insurer. See 40 P.S. §991.1801(1). To that end, PIGA is "[t]o be deemed the insurer to the extent of its obligation on the covered claims and, to such extent, shall have all rights, duties and obligations of the insolvent insurer as if that insurer had not become insolvent." 40 P.S. §991.1803(b)(2). See also, *UTI Corp. v. Fireman's Fund Insurance Co.,* 896 F. Supp. 389, 395 (D.N.J. 1995) (PIGA "stands in the shoes" of the insolvent insurer and assumes its duties and obligations). As the Pennsylvania Supreme Court has clearly stated:

"The *only* limitation placed upon an injured party is that [PIGA's] own limitations of liability apply rather than those of the insolvent insurer.[3] Thus, by the clear

3. The relevant footnote in the Supreme Court's opinion reflects that the limitation of liability identified in the above quoted passage is the statutory damage cap of $300,000 per claimant, regardless of the amount of the insolvent insurer's coverage limits set forth in its policy. See 40 P.S. §991.1803(B)(1)(8) (PIGA's maximum obligation is "[a]n amount not exceeding $300,000 per claimant for all other covered claims.").

and unambiguous terms of the statute, PIGA is deemed to be an insurer and is placed in the stead of the insolvent insurer, with *all* of that insurer's rights and duties and obligations." *Donegal Mutual Insurance Co. v. Long,* 528 Pa. 295, 300-301, 597 A.2d 1124, 1127 (1991). (emphasis added)

Under the express provisions of the Act, PIGA is empowered to settle and pay "covered claims" and to deny all other claims. *Main Line Health Inc. v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund,* 738 A.2d 66, 70 and n.15 (Pa. Commw. 1999), *aff'd,* 566 Pa. 4, 777 A.2d 1048 (2001). For example, section 1803(b)(4) states that PIGA is authorized to investigate, pay and deny claims "and may review . . . judgments to which the insolvent insurer or its insureds were parties to determine the extent to which such . . . judgments may be properly contested." 40 P.S. §991.1803(b)(4). Section 1819(b) of the Act addresses default judgments which have been entered against the insolvent insurer and provides:

"As to any covered claims arising from a judgment under any decision, verdict or finding based on the default of the insolvent insurer or its failure to defend an insured, the association, either on its own behalf or on behalf of such insured, may apply to have such judgment, order, decision, verdict or finding set aside by the same court that made such judgment, order, decision, verdict or finding and shall be permitted to defend against such claim on the merits." 40 P.S. §991.1819(b). PIGA contends that the language stating that it "shall be permitted to defend against such claim on the merits" grants PIGA an unconditional right to open a default judgment

without having to satisfy any of the criteria set forth in the tripartite test governing the opening of default judgments.

There are no reported decisions interpreting 40 P.S. §991.1819(b) and relatively little case law construing its verbatim predecessor, 40 P.S. §1701.602(b) (repealed).[4] The only decisional precedent addressing PIGA's capacity to open default judgments involves defaults that occurred while the insurer was in rehabilitation or receivership. Unfortunately, there is no appellate authority which distinctly analyzes the viability of a default judgment that was entered against an insurer *prior* to being placed into rehabilitation or receivership and the corresponding ability of PIGA to set aside such a pre-insolvency default judgment.

In its only reference to PIGA's authority to challenge default judgments, the Supreme Court of Pennsylvania does not indicate whether that right is mandatory or discretionary. In support of its conclusion that PIGA "is placed in the stead of the insolvent insurer, with all of that insurer's rights and duties and obligations," the *Long* court observed that "[p]ursuant to 40 P.S. §1701.602, [PIGA] is even empowered to seek a stay of proceedings and to reopen default judgments involving the insolvent insurer." *Long, supra* at 301 n.14, 597 A.2d at 1127 n.14. However, the Supreme Court does not elaborate whether

---

4. The content of the current Act's default judgment provision is identical to former section 1701.602(b). See *Ascher,* 722 A.2d at 1083 n.5. Under section 1922(4) of the Statutory Construction Act, 1 Pa.C.S. §1922(4), it is appropriate to consider judicial interpretations of an earlier version of a law in attempting to construe an existing statute. See *Morrow v. Scott Twp. Bd. of Supervisors,* 103 Lacka. Jur. 153, 158 n.2 (2002).

PIGA's ability to reopen a default judgment involving an insolvent insurer is, or is not, absolute.

The Superior Court has considered the application of 40 P.S. §1701.602(b) (repealed), albeit in the context of default judgments that were entered while the insurer was in receivership. In *Adler v. Huddleston,* 268 Pa. Super. 163, 407 A.2d 881 (1979), the plaintiff filed an action against a defendant whose insurer was already insolvent by the time that the suit was instituted. After the defendant failed to file a timely answer, the plaintiff secured a default judgment against the unrepresented and uninsured defendant. Once PIGA assumed the defense and representation of the defendant, both parties agreed to open the default judgment. However, inasmuch as PIGA similarly failed to file a responsive pleading within the allotted time period, the default judgment was reinstated by the court. PIGA appealed and asserted that the lower court contravened section 1701.602(b) by reinstating the judgment. In summarizing PIGA's argument, the Superior Court remarked "[t]he reasoning is that once [PIGA], in the applicable situation, decides to apply for an opening of judgment, the hearing court must provide the means for [PIGA] to defend on the merits. We disagree." *Id.* at 166, 407 A.2d at 882. Finding that PIGA had been dilatory in its own right, the *Adler* court concluded:

"Such conduct is contrary to the prompt resolution of covered claims. We find no error in the lower court's considered decision to revoke its prior order and to vacate the opening of judgment and reinstate the judgment. The 'Act' in no way hinders or limits such discretion by the court." *Id.,* at 167, 407 A.2d at 883. Cf. *McMahon v.*

*Caravan Refrigerated Cargo Inc.,* 406 Pa. Super. 303, 309, 594 A.2d 349, 352 (1991) (holding PIGA responsible for a claim that resulted from a default judgment which had been entered against an insured whose carrier was later adjudicated insolvent).

In *Rockwood Insurance Co. v. Piper,* 440 Pa. Super. 557, 656 A.2d 510 (1995), the insurer commenced a declaratory judgment action against a defendant who subsequently filed for bankruptcy. After the insurer secured relief from the automatic stay, it neglected to prosecute the litigation diligently and was eventually declared to be insolvent. PIGA assumed the insolvent insurer's assets and liabilities, including its ability to pursue the declaratory judgment action. However, the trial court later granted a judgment of non pros against PIGA based, in part, upon delay which was attributable to the insolvent insurer prior to its insolvency. In affirming the trial court's denial of PIGA's petition to reopen the judgment of non pros, the Superior Court quoted with approval the "sound rationale" of the lower court which concluded that "[i]t is obvious from this language [in the Act] that the legislature did not intend to provide PIGA with a 'clean slate.'" *Id.,* at 561, 656 A.2d at 512.

Finally, in *Ascher, supra,* a class action was commenced against State Auto Insurance Association to recover first party benefits under the former No-Fault Act. Once the Indiana Department of Insurance placed State Auto into receivership under the supervision of a rehabilitator, State Auto filed a motion for a stay of the class action proceedings, but "[t]his motion was subsequently denied, and counsel for State Auto was permitted to withdraw" by order of court. Nevertheless, "[t]he case pro-

ceeded to trial . . . and it is undisputed that defendant State Auto, which was then in receivership, was not represented by counsel at trial." *Ascher,* 722 A.2d at 1080. Verdicts were returned in favor of each class member and the trial judge "ordered State Auto to pay $346,854 in plaintiffs' attorneys' fees." *Id.* at 1081.

More than two years after State Auto was declared insolvent, Ascher filed another class action regarding the no-fault benefits due, but this time she named PIGA as the defendant. The trial court granted the motion for class certification and ordered PIGA to pay 18 percent interest on the earlier uncontested verdicts entered for no-fault benefits and attorneys' fees, "excluding the period of State Auto's receivership . . . until it was declared insolvent . . . ." *Id.* On appeal, PIGA argued that former section 1701.602(b) entitled it to challenge the unappealed verdicts that had been entered against State Auto while it was in receivership and unrepresented by counsel. In granting PIGA the opportunity to contest the verdicts, interest and fees that were awarded in absentia, the Superior Court reasoned:

"We believe that the express provisions of the PIGA Act, as well as the public policy underlying the Act, require that we vacate the judgment entered upon the jury verdict and remand to permit [PIGA] to defend against such claims on the merits. . . .

"Thus, should PIGA be found liable for the insurance claims in the instant matter, [plaintiff] would be entitled to 'properly assess attorneys' fees, costs, and interest.' . . . Instantly, however, appellant PIGA was never afforded the opportunity to argue the statute of limitations defense or the alleged unreasonableness of the use of a

multiplier in calculating attorneys' fees . . . . Accordingly, these issues may be presented to the court upon remand." *Id.,* at 1084-85. (citation omitted)

What can be gleaned from this appellate precedent is that PIGA has an unqualified right to set aside any default judgment that was entered against the insolvent insurer while it was in rehabilitation or receivership and unable to defend the claim on the merits. See *Ascher, supra.* However, in those instances where the default occurred while the insurer was solvent and fully capable of mounting a defense, it does not appear that PIGA's right to open the default judgment is "automatic." Since the Superior Court has cautioned that the Act "did not intend to provide PIGA with a 'clean slate,'" *Piper, supra,* and has rejected the argument that once PIGA "decides to apply for an opening of judgment, the hearing court must provide the means for [PIGA] to defend on the merits," *Adler, supra* at 166, 407 A.2d at 882, PIGA's proffered interpretation of section 1819(b) is not supported by existing case law.

PIGA's contention that the Act grants it an autocratic right to open any default judgment which predates its involvement cannot be reconciled with other provisions of the Act. See *Housing Authority of the County of Chester v. Pennsylvania State Civil Service Commission,* 556 Pa 621, 640, 730 A.2d 935, 945 (1999) ("[i]t is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute"). Section 1803(b)(2) clearly states that PIGA "shall have all . . . duties and obligations of the insolvent insurer as if that insurer had not become insolvent." By

the time that Reliance was placed into rehabilitation on May 29, 2001, it had been cognizant of the default judgment against Albert for more than four months and, consequently, had forfeited its right to open that default judgment since it neglected to promptly file a petition to open. See *Allegheny Hydro,* 722 A.2d at 194 (41-day delay between notice of default and filing of petition was deemed to be untimely); *Castings Condominium, supra* at 73, 663 A.2d at 223 (three-month delay is not prompt). Prior to Reliance's rehabilitation, plaintiffs detrimentally relied upon the enforceability of the default judgment by severing their claims, dismissing a co-defendant and certifying the severed action for trial. If PIGA is now permitted to belatedly open the default judgment without regard to the parties' pre-rehabilitation conduct, PIGA would not assume all of Reliance's rights and duties "as if that insurer had not become insolvent."

It makes perfect sense for PIGA to have an unconditional right to set aside a default judgment which occurred during the insurer's rehabilitation or insolvency and while the insurer and defendant were incapable of defending the claim on the merits. The same should not be true, however, for default judgments or verdicts that were entered at a time when the defendant and then solvent insurer had the ability to defend the claim and protect their interests. Such an interpretation is consistent with the language of section 1819(b) which refers to judgments "based on the default of the *insolvent* insurer" and implies that the default took place while the insurer was "insolvent" and unable "to defend an insured," rather than when it was solvent and simply unwilling to do so. PIGA's argument to the contrary is premised upon an

unpublished memorandum opinion, *Feldstein v. 7254 Castor Ave.,* 369 Pa. Super. 654, 531 A.2d 530 (1987) (table), which cannot be relied upon or cited for precedential value. See *Commonwealth v. Phinn,* 761 A.2d 176, 179-80 (Pa. Super. 2000) (citing Internal Operating Procedures of the Superior Court, §444.B), *app. denied,* 567 Pa. 712, 785 A.2d 89 (2001); *McLafferty v. Cohen,* 52 D.&C.4th 344, 349 n.8 (Phila. Cty. 2001).

Under 40 P.S. §991.1819(b), PIGA inherits both the feats and sins committed by the former insurer while solvent and reaps the benefits of the insurer's achievements, and suffers the consequences of its transgressions, during its solvency. For example, if Reliance had succeeded with MPH's preliminary objections and secured the dismissal of certain claims, PIGA would have been entitled to enjoy the benefit of that ruling. Conversely, if plaintiffs have obtained a default judgment due to the failure of Albert and Reliance to timely answer the complaint while Reliance was still solvent, PIGA should not be granted the unfettered right to set aside that judgment at any time it chooses. If PIGA is truly, "deemed to be an insurer and is placed in the stead of the insolvent insurer, with all of that insurer's rights and duties and obligations," *Long, supra* at 301, 597 A.2d at 1127, it should not be entitled to shirk responsibility for the insurer's conduct while it was solvent. To hold otherwise would defeat the Act's express purpose of avoiding "excessive delay in the payment of such claims." See 40 P.S. §991.1801(1).

Accordingly, reading all sections of the Insurance Guaranty Association Act in conjunction with each other, PIGA does not possess the "automatic" right to set aside

a default judgment that was entered against a defendant at a time when the liability insurer was solvent and capable of retaining counsel to file an answer and defend the claim on the merits. Based upon the factual circumstances of this case, including Reliance's failure to challenge the default judgment during the more than four-month hiatus between its notice of the default and subsequent entry into rehabilitation, PIGA should be treated the same as any other litigant and may set aside the default judgment at issue by satisfying the tripartite criteria discussed above.

## (C) *Timeliness of PIGA's Petition To Open*

The timeliness of a petition to open a default judgment is measured from the date that notice of the entry of the default judgment was received. *Alba v. Urology Associates of Kingston,* 409 Pa. Super. 406, 409, 598 A.2d 57, 58 (1991); *Sparaney,* 101 Lacka. Jur. at 436. In determining whether the petition has been promptly filed, the court does not employ a "bright line test" and instead focuses upon "(1) the length of the delay between discovery of the entry of a default judgment and filing the petition to open, and (2) the reason for the delay." *Dumoff,* 754 A.2d at 1282; *Allegheny Hydro,* 722 A.2d at 193. If a petition to open is filed within 10 days after the entry of judgment, Pa.R.C.P. 237.3 presumes that it has been promptly filed with legitimate excuse for the delay. *American West Airlines,* 742 A.2d at 698 n.2; *Cohen v. Mirin,* 729 A.2d 1236, 1238 n.3 (Pa. Super. 1999).

In the case at bar, more than four months elapsed between the date that Reliance received notice of the de-

fault judgment and its entry into rehabilitation on May 29, 2001. See *Reliance Insurance Companies v. Festa,* 233 Pa. Super. 61, 64-65, 335 A.2d 400, 402 (1975) (trial court abused its discretion in opening a default judgment where there was an unexplained delay of 71 days in filing the petition to open). Furthermore, after the final stay expired on February 1, 2002, PIGA itself delayed an additional 41 days before it presented the instant petition to open. The Superior Court has "held that delays of as little as 21 days have been untimely." *Dumoff, supra.* Compare *Casa Di Bertacchi Corp.* at 612, 674 A.2d at 1102 ("[t]he trial court was generous in its conclusion that the petition was timely filed" when it was submitted 17 days after notice of the entry of default). Assuming arguendo that the nine-month period between the date of Reliance's placement into rehabilitation on May 29, 2001, and the expiration of the final stay on February 1, 2002, is excluded from consideration, PIGA's petition to open the default judgment was nonetheless untimely. Since an interval of 41 days between notice of the default and the filing of the petition to open has been judicially recognized as untimely, see *Allegheny Hydro, supra* (41-day delay is not prompt), a petition to set aside the judgment was not promptly filed by *either* Reliance *or* PIGA.

Inasmuch as PIGA cannot satisfy the first prong of the tripartite test, its petition to set aside the default judgment must be denied. See *Castings Condominium, supra* (trial court is powerless to open a default judgment unless the defendant has established all three of the required criteria). Thus, we need not consider whether a meritorious defense exists or whether PIGA has offered a suitable explanation for the initial failure to answer the complaint. An appropriate order will follow.

## ORDER

And now, May 1, 2002, upon consideration of the "petition of defendant, Albert W. Joseph, to open default judgment," the memoranda of law submitted by the parties and the oral argument of counsel on April 24, 2002, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the "petition of defendant, Albert W. Joseph, to open default judgment" is denied.